**FILE**

IN CLERKS OFFICE

SUPREME COURT, STATE OF WASHINGTON

DATE JUL 11 2013

*Madsen, C.J.*

CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on July 11, 2013

*for* Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SKAGIT COUNTY PUBLIC HOSPITAL DISTRICT NO. 304, dba United General Hospital, | ) ) ) ) | No. 86796-8 |
| Respondent, | ) ) ) | |
| v. | ) ) ) | En Banc |
| SKAGIT COUNTY PUBLIC HOSPITAL DISTRICT NO. 1 and THE BOARD OF COMMISSIONERS THEREOF, dba Skagit Valley Hospital, | ) ) ) ) ) ) | |
| Appellant. | ) ) ) ) | Filed _____ JUL 11 2013 |

GONZÁLEZ, J.—This case concerns the authority of a rural public hospital district (PHD) to provide health care services outside its own boundaries and within those of another rural PHD. Skagit Valley Hospital acquired a medical group that operated multiple clinics, including one located within United General Hospital's territory. United General challenged Skagit Valley in Snohomish County Superior Court, which granted a writ of prohibition ordering Skagit Valley to stop providing health care services within United General's boundaries.

The trial court properly granted a writ of prohibition. A rural PHD may not invade the territory of another rural PHD without that PHD's permission. Further,

the trial court did not abuse its discretion by finding there was no plain, speedy, and adequate remedy in legal procedure.

## I.    FACTS AND PROCEDURAL HISTORY

This is an action between two rural PHDs, which are municipal corporations organized under chapter 70.44 RCW. Skagit County PHD No. 1, doing business as Skagit Valley Hospital, encompasses the majority of the city of Mount Vernon and areas southwest of the city of Burlington. Skagit County PHD No. 304, doing business as United General Hospital, includes the cities of Sedro-Woolley, Burlington, and other areas and towns. Both entities are rural PHDs because their respective territories do not contain a city with a population greater than 50,000. RCW 70.44.460.

This dispute arose when Skagit Valley acquired Skagit Valley Medical Center's (SVMC) medical practice. SVMC operated a number of offices, including a practice in Unit 2 of the Pavilion, a commercial office building located within United General's boundaries. Skagit Valley notified United General of its intent to purchase SVMC and assured it that referrals from Unit 2 would not be affected by the change in ownership. SVMC also offered United General the option to purchase Unit 2. United General did not purchase Unit 2, but instead formally opposed the merger through a board resolution, asserting that Skagit Valley needed United General's approval to operate within its boundaries.

2

Nevertheless, Skagit Valley purchased SVMC's assets and began operating its former facilities, including Unit 2 of the Pavilion.

United General filed a complaint against Skagit Valley in Snohomish County Superior Court, seeking declaratory judgment, a writ of prohibition, and injunctive relief. United General also filed a motion for an order to show cause why the trial court should not immediately issue a writ of prohibition, stopping Skagit Valley from providing medical services within its boundaries. Visiting Judge Ronald Castleberry issued the writ of prohibition and stayed the effective date of the writ, pending the decision and mandate of an appellate court. Skagit Valley appealed directly to this court.

## II.   ISSUES

1.   May a rural PHD provide medical services within the boundaries of another rural PHD without that district's permission?

2.   Did the trial court abuse its discretion by finding that no plain, speedy, and adequate remedy was available in the course of legal procedure?

## III.   ANALYSIS

This case asks us to decide whether the trial court appropriately issued a writ of prohibition ordering Skagit Valley to refrain from operating a health care facility within United General's boundaries. A writ of prohibition "arrests the proceedings of any tribunal, corporation, board or person, when such proceedings

are without or in excess of the jurisdiction of such tribunal, corporation, board or person." RCW 7.16.290. A writ of prohibition is a drastic measure, which is to be issued only when two conditions are met: "(1) [a]bsence or excess of jurisdiction, and (2) absence of a plain, speedy, and adequate remedy in the course of legal procedure. The absence of either one precludes the issuance of the writ." *Kreidler v. Eikenberry*, 111 Wn.2d 828, 838, 766 P.2d 438 (1989) (quoting *State ex rel. Ernst v. Superior Court*, 198 Wash. 133, 137, 87 P.2d 294 (1939)). Although the common law writ of prohibition restrains the unauthorized exercise of only judicial or quasi-judicial power, the statutory writ of prohibition applies to executive, administrative, and legislative acts as well. *Winsor v. Bridges*, 24 Wash. 540, 542-543, 64 P. 780 (1901).

Skagit Valley discusses both prongs required to obtain a writ of prohibition, arguing that the trial court erred because (1) Skagit Valley did not act in excess of its jurisdiction by taking over SVMC's practice in Unit 2 and (2) an adequate remedy in the course of legal procedure was potentially available to United General.

*1. May a rural PHD provide medical services within the boundaries of another rural PHD without that district's permission?*

Turning to the first prong required to obtain a writ of prohibition, we consider Skagit Valley's argument that it did not act in excess of its jurisdiction

because PHDs may freely compete against all health care providers, even in other districts. Skagit Valley refers to its statutory authority "to provide hospital and other health care services for residents of said district by facilities located outside the boundaries of said district, by contract or in any other manner said commissioners may deem expedient or necessary under the existing conditions . . . ." RCW 70.44.060(3). The meaning of this statute is a question of law, which we review de novo, considering the statutory scheme as a whole. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

The trial court determined that a PHD cannot provide services in another PHD's territory without that PHD's permission, relying on *Alderwood Water District v. Pope & Talbott*, 62 Wn.2d 319, 382 P.2d 639 (1963), and a 1988 attorney general opinion (1988 Op. Att'y Gen. No. 15). In *Alderwood*, we considered the analogous issue of whether a municipal water district could furnish water outside its own boundaries and within those of another water district. 62 Wn.2d at 320. A statute stated that "'a water district may provide water services to property owners outside the limits of the water district,'" *id.* (quoting former RCW 57.08.045 (1959)), but we refused to mechanically conclude from this provision that a water district could supply water within the boundaries of other water districts. We relied on "a general rule that there cannot be two municipal corporations exercising the same functions in the same territory at the same time."

*Id.* at 321; *see also* 2 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 7:8 (3d rev. ed. 2006). We noted that case law had eroded the rule but that "it continues to serve as a touchstone in the sense that it expresses a public policy against duplication of public functions, and that such duplication is normally not permissible unless it is provided for in some manner by statute." 62 Wn.2d at 321. The general rule serves to "alert courts . . . to the necessity of closely examining in toto statutory provisions conferring authority upon the potentially competing municipal corporations." *Id.*

Construing the relevant statutory framework as a whole, we concluded that the legislature intended to allow water districts to supply water to individuals outside of their districts only if those individuals were not within the boundaries of another water district. *Id.* at 323. In particular, we relied on a statute prohibiting the territory of water districts from overlapping, a statute requiring water district commissioners to prepare a comprehensive plan sufficient to fulfill the foreseeable needs of their districts, and on various statutes establishing the financial dependence of water districts on the sale of water. *Id.* at 322. Because these purposes would be impeded if one water district were allowed to supply water within the boundaries of another, and because a substantial portion of state land was not within any water district, we concluded that a statute "permitting water districts to supply water to individuals outside of their districts was meant to

extend water services only to those individuals who were not within the boundaries of any other water district." *Id.* at 323 (citations omitted).

In 1988 Op. Att'y Gen. No. 15, the attorney general concluded that the *Alderwood* rule extended to PHDs organized under chapter 70.44 RCW. The parties dispute the weight we grant to opinions of the attorney general. Opinions of the attorney general are entitled to considerable weight, but they are not binding on this court and we give them less deference when they involve issues of statutory construction. *Wash. Fed'n of State Employees v. Office of Fin. Mgmt.*, 121 Wn.2d 152, 164-65, 849 P.2d 1201 (1993); *ATU Legislative Council of Wash. State v. State*, 145 Wn.2d 544, 554, 40 P.3d 656 (2002).[1]

The question before the attorney general was whether a PHD could construct and operate a drug and alcohol treatment center outside its boundaries. The attorney general concluded that a PHD could open the treatment center outside its district, but not inside the boundaries of another PHD. Comparing the hospital

---

[1] United General refers to our conclusion that an attorney general opinion may possess greater weight where it provides notice to the legislature of an agency's interpretation of a statute and the legislature acquiesces to that interpretation by failing to amend the statute. Br. of Resp't at 6-7 (discussing *Bowles v. Wash. Dep't of Ret. Sys.*, 121 Wn.2d 52, 63-64, 847 P.2d 440 (1993)). This rule is based on the premise that the court gives great weight to the statutory interpretation of an agency or officer charged with enforcing a law. *Morin v. Johnson*, 49 Wn.2d 275, 279, 300 P.2d 569 (1956); *see Bowles*, 121 Wn.2d at 63-64. United General has not indicated why this reasoning would extend to attorney general opinions such as 1988 Att'y Gen. Op. No. 15, which does not include the statutory interpretation of an agency or department charged with the statute's enforcement.

district's plan to the water district's actions in *Alderwood*, the attorney general found that allowing a PHD to invade another PHD's territory would (1) be inconsistent with the statutory emphasis on district planning, which requires regular assessment of expenses and development needs within each district; (2) compromise the invaded PHD's ability to generate revenue for funding; and (3) endanger policy concerns that support locally provided health care services.

Skagit Valley argues that its express statutory authority to provide health care services outside its district "by contract or in any other manner said commissioners may deem expedient or necessary under the existing conditions," RCW 70.44.060(3), empowers it to operate within the boundaries of another PHD. For the reasons set forth in *Alderwood*, we disagree.

As in *Alderwood*, the general rule that there cannot be two municipal corporations performing the same functions at the same time in the same territory leads us to closely examine the statutes conferring authority on the PHDs. *See* 62 Wn.2d at 321; *see also Campbell & Gwinn, LLC*, 146 Wn.2d at 11-12. We find RCW 70.44.060(3) is ambiguous because it may be construed to allow a PHD to provide services anywhere outside its geographic district or it may permit a PHD only to provide services outside its own territory but not within the territory of another PHD. Where a statute is ambiguous, the court construes it in a manner that

8

fulfills legislative purpose and intent. *In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993).

Based on statutes governing PHDs and a statement of legislative intent, we find it unlikely that the legislature meant to allow one rural PHD to raid the territory of another. First, revenue from health care services partly funds PHDs, so allowing other districts to compete in one PHD's territory would undermine that district's financial stability. *See* RCW 70.44.060(5). Second, rural PHDs are expressly permitted to "enter into cooperative agreements and contracts with other rural public hospital districts in order to provide for the health care needs of the people served by the hospital districts," which implies that the legislature encourages rural PHDs to cooperate *rather than* compete in each other's territory without permission. RCW 70.44.450. Third, a statement of intent that follows the cooperative agreement section indicates that the legislature did not grant rural PHDs flexibility in making business decisions similar to that enjoyed by private entities:

> The legislature finds that maintaining the viability of health care service delivery in rural areas of Washington is a primary goal of state health policy. The legislature also finds that most hospitals located in rural Washington are operated by public hospital districts authorized under chapter 70.44 RCW and *declares that it is not cost-effective, practical, or desirable to provide quality health and hospital care services in rural areas on a competitive basis because of limited patient volume and geographic isolation.* It is the intent of this act to foster the development of cooperative and collaborative arrangements among rural public hospital districts by specifically authorizing

cooperative agreements and contracts for these entities under the interlocal cooperation act.

LAWS OF 1992, ch. 161, § 1 (emphasis added).[2] Considered together with related provisions and the legislature's statement of intent, it seems that RCW 70.44.060 does not allow a rural PHD to operate in another rural PHD's territory without permission.[3]

The dissent argues our conclusion that a rural PHD may not operate within the territory of another rural PHD without permission is contrary to "legislative intent because it has the potential to diminish rather than enhance rural patients' access to health care services." Dissent at 10. We do not evaluate the wisdom behind the legislature's decision to limit rural PHDs' ability to compete. The legislature expressly stated its intent to displace competition in the provision of rural health care and connected the finances of rural and nonrural PHDs with revenue from health care services. These steps are inconsistent with the intent to allow a rural PHD to offer services in another rural PHD's territory without that

---

[2] This legislative finding was passed in response to concerns that PHDs would be susceptible to antitrust challenges if they entered into interlocal agreements. FINAL B. REP. on Substitute H.B. 2495, 52d Leg., Reg. Sess. (Wash. 1992). Nevertheless, the finding indicates that the legislature did not intend to allow competition among rural health care providers.

[3] Skagit Valley cites another legislative finding that recognizes the benefit of competition among health care providers as long as certain attributes of a fair health care market are present. Br. of Appellant at 1-2, 16-17 (quoting RCW 43.72.300(1)). The finding continues, however, to note that most of those attributes do not exist and expressly states the legislature's intent to displace competition in the health care market. RCW 43.72.300(1)-(2).

PHD's permission. Whether rural Washingtonians would be better served by a competitive health care market is a complicated issue properly left to the legislature.

Skagit Valley and amicus King County PHD No. 2 argue that the legislature implicitly authorized them to provide health care services in another PHD's territory without permission because it did not expressly prohibit them from doing so. They draw our attention to RCW 57.08.044, which prohibits water-sewer districts from providing services within the area of another district "without the consent by resolution of the board of commissioners of that other district." But the mere fact the legislature explicitly adopted background principles of municipal law in one context does not mean that they meant to abandon them in others.

Skagit Valley notes that the rule prohibiting two municipal corporations from operating in the same territory applies only when the corporations exercise governmental functions as opposed to proprietary functions. *See Pub. Util. Dist. No. 1 of Pend Oreille County v. Town of Newport*, 38 Wn.2d 221, 227, 228 P.2d 766 (1951). This principle is consistent with the tenet that when the legislature empowers a municipal corporation to engage in a business, the corporation may exercise its business powers much in the same way as a private entity. *City of Tacoma v. Taxpayers of Tacoma*, 108 Wn.2d 679, 693-94, 743 P.2d 793 (1987); *Pub. Util. Dist. No. 1 of Pend Oreille County*, 38 Wn.2d at 227-28. According to

Skagit Valley, providing health care services is a proprietary, not a governmental function, such that the general rule does not apply.

Whether a municipal act is governmental or proprietary in nature depends largely on whether the act is for the common good or for the specific benefit or profit of the corporate entity. *Okeson v. City of Seattle*, 150 Wn.2d 540, 550, 78 P.3d 1279 (2003). However, we need not decide whether providing health care services itself is a proprietary or governmental function because the legislature has amply indicated its intent in regard to rural PHDs. The restrictions placed on rural PHDs' competitive practices and the legislative findings in support of those restrictions establish that the legislature did not grant rural PHDs business powers similar to those employed by private entities. Rather, rural PHDs act in a governmental capacity when providing health care services.

Nonetheless, Skagit Valley contends that providing health care services for compensation is a proprietary act, noting that the Court of Appeals recently held in an unrelated case that Skagit Valley acted in its proprietary capacity—and thus was not shielded by sovereign immunity—when it deposited money from insurers and beneficiaries into its bank account. *Skagit County Pub. Hosp. Dist. No. 1 v. Dep't of Revenue*, 158 Wn. App. 426, 445, 242 P.3d 909 (2010). But Skagit Valley assumes that because it arguably acts in a proprietary capacity when engaging in administrative matters it also exercises its proprietary powers when providing

12

health care. The assumption that a municipal corporation acts in only one capacity is incorrect. *See, e.g., Okeson*, 150 Wn.2d at 550 (holding that the city of Seattle acted in its proprietary capacity in maintaining an electric utility, but that providing streetlights is a governmental function).

Because the legislature has indicated that rural PHDs operate in a governmental capacity when providing health care services, the general rule that two municipal corporations may not perform the same function in the same territory applies. Although this rule has been weakened in case law, it still guides us to closely examine relevant statutory provisions. The statutory framework governing rural PHDs indicates that a rural PHD may not provide health care services within the boundaries of another rural PHD without that PHD's permission.[4]

---

[4] Because Skagit Valley and United General are both rural PHDs, we limit our decision to rural PHDs. The distinction between rural and nonrural PHDs is of legislative, not judicial, creation. The principle of judicial restraint counsels us to resolve this dispute based on the facts currently before us. *See Johnson v. Morris*, 87 Wn.2d 922, 931, 557 P.2d 1299 (1976) ("As a general rule, this court will decide only such questions as are necessary for a determination of the case presented for consideration, and will not render decisions in advance of such necessity, particularly when the question is a constitutional one, or involves the construction of a statute."); *see also Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 466, 299 P.3d 651 (2013) (Madsen, C.J., concurring) ("Unwisely, the majority answers questions that the court was not asked to decide and on which no briefing was provided."). *But see* dissent at 15-17. We respectfully disagree with the dissent's characterization of our opinion as finding the statute is ambiguous as applied only to rural hospital districts. We make no such finding, leaving for another day and a

13

*2. Was a plain, speedy, and adequate remedy available in the course of legal procedure?*

Turning to the second prong of the conditions for obtaining a writ of prohibition—that there be no plain, speedy, and adequate remedy available in the course of legal procedure—Skagit Valley also contends that the trial court erred by finding that alternative relief was unavailable. "The question as to what constitutes a plain, speedy, and adequate remedy is not dependent upon any general rule, but upon the facts of each particular case, and its determination therefore rests in the sound discretion of the court in which the proceeding is instituted." *State ex rel. O'Brien v. Police Court of Seattle*, 14 Wn.2d 340, 348, 128 P.2d 332 (1942). A trial court abuses its discretion if a decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard . . . ." *Id.* at 47.

The trial court did not abuse its discretion. United General may have been able to seek other relief, but under the facts of this case, it was not manifestly unreasonable to find that there was no plain, speedy, and adequate remedy available in the ordinary course of legal procedure.

---

properly presented case the decision as to whether nonrural PHDs are subject to a similar restriction.

## IV.   CONCLUSION

Skagit Valley acted in excess of its jurisdiction by providing medical services in United General's territory.  The trial court did not abuse its discretion in finding the absence of a plain, speedy, and adequate remedy in the course of legal procedure.  We affirm the trial court.

*Gonzàlez, J.*

WE CONCUR:

*Fairhurst, J.*

*Chambers, J.P.T.*

*Owens, J.*

*Wiggins, J.*

No. 86796-8

MADSEN, C.J. (dissenting)—I disagree with the majority that the trial court properly granted Skagit County Public Hospital District No. 304's (United General) application for a writ of prohibition against Skagit County Public Hospital District No. 1 (Skagit Valley). I would hold that the trial court abused its discretion by applying an incorrect legal standard to United General's application for a writ of prohibition. Specifically, the trial court granted United General's application because it found that United General would not succeed in its request for injunctive relief. But the relevant inquiry is not whether the applicant will be ultimately successful under alternate legal procedures; the question is whether alternate legal procedures are available.

I would also hold that Skagit Valley did not exceed its jurisdiction by providing medical services in United General's boundaries. RCW 70.44.060(3) grants broad powers to a public hospital district (PHD) to provide medical services within, and outside of, the PHD's boundaries. The majority, however, finds that

RCW 70.44.060(3) is ambiguous—but only as applied to rural hospital districts. The majority concludes the legislature intended that a rural PHD must obtain the permission of another rural PHD before the first rural PHD can provide medical services in the second. But the statutory grant of power is not ambiguous. Instead, it is the majority that has created ambiguity through its interpretation of the statute and misapplication of the rules of statutory construction. Even if the statute were ambiguous, the legislature did not intend to restrict the provision of medical services to the detriment of rural patients, which is the result of the majority's statutory interpretation.

Finally, I believe the majority's holding, limiting its statutory interpretation to rural PHDs, is contrary to the statutory language and is not a logical application of the central tenet of municipal corporations' law upon which the majority relies for its holding.

For these reasons, I respectfully dissent.

Discussion

1. Writ of Prohibition

A person with standing may seek a writ of prohibition to arrest the proceedings of any tribunal, corporation, board, or person when "such proceedings are without or in excess of the jurisdiction [of the person or entity]." RCW 7.16.290. The issuance of a writ of prohibition is a "drastic measure." *Kreidler v.*

2

*Eikenberry*, 111 Wn.2d 828, 838, 766 P.2d 438 (1989). A court should issue a writ of prohibition only when two factors coincide: "'(1) Absence or excess of jurisdiction, and (2) the absence of a plain, speedy, and adequate remedy in the course of legal procedure.'" *Id.* (quoting *State ex rel. Ernst v. Superior Court*, 198 Wash. 133, 137, 87 P.2d 294 (1939)). The absence of either factor "'precludes the issuance of the writ.'" *Id.*

The majority holds that the trial court did not abuse its discretion in issuing a writ of prohibition. The majority concludes that "it was not manifestly unreasonable to find that there was no plain, speedy, and adequate remedy available in the ordinary course of legal procedure." Majority at 14. It is true that "what constitutes a plain, speedy, and adequate remedy" depends "upon the facts of each particular case, and . . . rests in the sound discretion of the court in which the proceeding is instituted." *State ex rel. O'Brien v. Police Court of Seattle*, 14 Wn.2d 340, 348, 128 P.2d 332 (1942). But a trial court abuses its discretion when its decision is based on untenable reasons, i.e., the trial court reached its decision "by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

Here, the trial court applied the wrong legal standard to United General's application for a writ of prohibition. The trial court erroneously considered whether United General would be successful in obtaining injunctive relief. The

3

trial court ultimately found that United General would not be successful because it would not be able to meet its burden of proving harm.[1] The trial court went on to say, "And if [United General] can't get in the injunction, then there is no other plain, adequate remedy available to [United General]." Verbatim Report of Proceedings (Sept. 12, 2011) at 7. But the test is not whether the applicant would ultimately be successful under an alternative procedure. The test is whether other legal procedures are *available* to an applicant.

Washington courts have repeatedly denied applications for writs of prohibition where the applicant can pursue alternate remedies such as damages, injunctive relief, and appeal from the judgment of the lower court. *See, e.g., Kreidler*, 111 Wn.2d at 838-39 (denying application for writ because applicants could have intervened in the proceedings before the superior court); *Johnson v. Pate*, 54 Wn.2d 148, 150-51, 338 P.2d 131 (1959) (denying application for writ when applicant had adequate remedy by appeal); *State ex rel. N.Y. Cas. Co. v. Superior Court*, 31 Wn.2d 834, 843, 199 P.2d 581 (1948) (denying application for writ when the applicant could have appealed the trial court's grant or denial of the parties' dispositive motions); *County of Spokane v. Local No. 1553*, 76 Wn. App.

---

[1] To obtain injunctive relief, one must show (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury. *Port of Seattle v. Int'l Longshoremen's & Warehousemen's Union*, 52 Wn.2d 317, 319, 324 P.2d 1099 (1958).

4

765, 770-71, 888 P.3d 735 (1995) (denying writ of prohibition when applicants could seek an injunction); *Consol. Disposal Servs., Inc. v. Grant County*, 51 Wn. App. 652, 657, 754 P.2d 1059 (1988) (quashing writ of prohibition in part because applicant arguably had grounds to obtain damages and injunctive relief).

United General could have sought relief using other legal procedures such as an injunction or declaratory judgment.[2] If the trial court had adjudicated the parties' rights through one of those procedures, and entered an order adverse to United General, United General could have appealed the trial court's order. The trial court erred in issuing a writ of prohibition when there were alternate "plain, speedy, and adequate" legal procedures that United General could have pursued.

The majority would allow a court to issue writs of prohibition based on the fact that a party might not ultimately be successful under alternate legal procedures. Under this standard, however, a writ of prohibition would cease to be an extraordinary or drastic remedy. Rather, a writ of prohibition would become "a dragnet by means of which all controverted and litigated questions between individual suitors may be brought into court." 72A C.J.S. *Prohibition* § 9, at 431 (2013) (footnote omitted).

---

[2] In its complaint, United General did in fact seek declaratory judgment and injunctive relief along with its request for a writ of prohibition. But United General later moved for a show cause hearing only on the writ of prohibition. This appeal is from the trial court's findings of fact and conclusions of law made at this show cause hearing.

5

In sum, I would hold that the trial court abused its discretion by applying an incorrect legal standard to General United's application for a writ of prohibition. The trial court should not have issued a writ of prohibition to United General on the grounds that United General was unlikely to be entitled to injunctive relief. United General could have sought relief under alternative legal procedures. Because I would find that United General did not satisfy the second factor necessary to obtain a writ of prohibition, I would vacate the writ.

2. Authority of PHDs to Locate Outside District Boundaries

Even if the procedure was proper, I would also hold that United General did not satisfy the first factor necessary to obtain a writ of prohibition because I do not think that Skagit Valley exceeded its jurisdiction by purchasing and operating a medical clinic within United General's territory.

If a statute's meaning is plain on its face, then we must give effect to that meaning as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Under the plain meaning rule, a court considers the statute and related statutes that disclose legislative intent about the provision in question. *Id.* at 10. The statute is ambiguous only if, after that inquiry, it is subject to multiple reasonable meanings. *Id.* If ambiguity exists, we can then consider canons of construction and case law to determine legislative

6

intent. *Jongeward v. BNSF Ry.*, 174 Wn.2d 586, 600, 278 P.3d 157 (2012) (citing *Campbell & Gwinn*, 146 Wn.2d at 12).

Here, RCW 70.44.060 delineates the powers and duties of PHDs. RCW 70.44.060(3) specifically grants PHDs the power to "provide hospital and other health care services for residents of [the] district by facilities located outside the boundaries of [the] district, by contract or *in any other manner* [the district's] commissioners may deem *expedient or necessary* under the existing conditions." PHDs are also authorized to "furnish proper and adequate services to all persons not residents of said district at such reasonable and fair compensation as may be considered appropriate." RCW 70.44.060(3). RCW 70.44.060(3) grants PHDs broad power to provide health care services inside, and outside, of their boundaries. The only limitation of this power is that PHDs must "at all times make adequate provision for the needs of the district." *Id.*

I do not believe that RCW 70.44.060(3)'s broad grant of powers to PHDs can reasonably be interpreted to require one rural PHD to have the permission of another rural PHD before the first rural PHD may provide health care services in the second. If the legislature meant to further limit the authority of rural PHDs to operate within the boundaries of other rural PHDs, the legislature could have added language to that effect. Instead, the plain language of RCW 70.44.060(3) is unambiguous. Because RCW 70.44.060(3) is subject to only one reasonable

7

interpretation, our inquiry should end here. *State v. Velasquez*, 176 Wn.2d 333, 336, 292 P.3d 92 (2013) (citing *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007)).

However, the majority improperly goes further and disregards our rules of statutory construction. Rather than limiting its discussion to the plain meaning derived from RCW 70.44.060(3) and related provisions, the majority turns to a case involving an unrelated statutory scheme. Majority at 8 (citing *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 321, 382 P.2d 639 (1963)). After analogizing *Alderwood*, the majority determines that RCW 70.44.060(3) is ambiguous. Majority at 8. But it is improper to consider *Alderwood*, or the unrelated statutory scheme considered there, to render a clear statute ambiguous. *Jongeward*, 174 Wn.2d at 600 ("If a statute remains ambiguous after a plain meaning analysis, it is appropriate to resort to interpretative aids, including canons of construction and case law." (citing *Campbell & Gwinn*, 146 Wn.2d at 12)). In failing to apply the well-established rules of construction, the majority fails to carry out the legislature's plain intent and creates ambiguity where none exists.

In fact, the majority ironically applies *Alderwood* while overlooking the fact that *Alderwood* itself follows our rules of statutory construction. There, we stated as "a general rule . . . there cannot be two municipal corporations exercising the same functions in the same territory at the same time." *Alderwood*, 62 Wn.2d at

8

321. After recognizing that this rule had been "virtually emasculated" by case law, we instructed courts to "closely examin[e] in toto statutory provisions conferring authority upon the potentially competing municipal corporations." *Id.* We then analyzed only the statutory scheme codified in Title 57 RCW, pertaining to water districts, and did not analogize unrelated schemes. *Id.* at 322-23. This approach is consistent with *Campbell & Gwinn.*

Moreover, the majority's analogy to *Alderwood* and the water district statutes is inapt. *Alderwood* involved statutes (since superseded) both granting *and* limiting the authority to provide services outside a district. *Id.* at 320-22 (citing former RCW 57.08.045 (1959); former RCW 57.04.070 (1929)). The limiting statute stated that "no lesser water district shall ever be created within the limits in whole or in part of any water district." *Id.* at 320-22 (citing former RCW 57.08.045; former RCW 57.04.070). It was from that limiting language that this court drew an implication that one water district should not infringe upon the territorial jurisdiction of another. *Id.* at 322. No similar limiting statute exists here.

Finally, a different public policy concern was at the heart of *Alderwood.* In *Alderwood,* we noted the public policy against duplication of public functions. *Id.* at 321. There, water mains were installed, leading to the dispute between adjoining municipal corporations. *Id.* at 319-20. We stated that allowing a water

9

district to ignore boundaries could potentially hurt the "orderly and economically well-planned development and utilization of public water service in rapidly expanding suburban residential areas." *Id.* at 320. However, concerns of duplication or hindering orderly expansion do not exist here because Skagit Valley acquired an *existing* medical clinic.

In addition to the plain, unambiguous language in RCW 70.44.060(3), the intent language added by the legislature further demonstrates that the legislature did *not* intend to limit the power of rural PHDs to provide health care services within the boundaries of another rural PHD. Indeed, the legislature is explicit—the primary goal of state health policy is to "maintain[] the viability of health care service delivery in rural areas of Washington." LAWS OF 1992, ch. 161, § 1. The majority's holding—preventing rural PHDs from providing health care services in another PHD without permission—is contrary to this legislative intent because it has the potential to diminish rather than enhance rural patients' access to health care services. Given the overarching concern for access to health care services, it is unlikely that the legislature meant to reduce rural patients' access to health care services just because two rural PHDs could not reach an agreement.

Furthermore, the legislature's intent to "foster development of cooperative and collaborative arrangements among rural hospital districts" clearly contemplates that rural PHDs will operate within the boundaries of other PHDs.

10

But the legislature did not command that this be accomplished only when the districts agreed. LAWS OF 1992, ch. 161, § 1.[3] Rather, "fostering" arrangements between rural PHDs suggests enablement and encouragement of such agreements; it does not suggest that a rural PHD must obtain permission before providing health care services in another PHD.

Moreover, legislative history reveals that the legislature was primarily concerned that rural PHDs would be "susceptible to antitrust challenges if they entered into interlocal agreements." FINAL B. REP. on Substitute H.B. 2495, 52d Leg., Reg. Sess. (Wash. 1992); *see also* James F. Blumstein, *Health Care Reform and Competing Visions of Medical Care: Antitrust and State Provider Cooperation Legislation*, 79 CORNELL L. REV. 1459, 1482 (1994) (noting that collaborative conduct between hospitals may be suspect because "[i]t is seen as territorial market division among actual or potential competitors, illegal per se

---

[3] In ascertaining the legislative intent underlying RCW 70.44.060(3), the majority relies on the statement of legislative intent accompanying the enactment of the Rural Public Hospital Districts Cooperation Act, which states:

> The legislature finds that maintaining the viability of health care service delivery in rural areas of Washington is a primary goal of state health policy. The legislature also finds that most hospitals located in rural Washington are operated by public hospital districts authorized under chapter 70.44 RCW and declares that it is not cost-effective, practical, or desirable to provide quality health and hospital care services in rural areas on a competitive basis because of limited patient volume and geographic isolation. It is the intent of this act to *foster* the development of cooperative and collaborative arrangements among rural public hospital districts by specifically authorizing cooperative agreements and contracts for these entities under the interlocal cooperation act.

LAWS OF 1992, ch. 161, § 1.

11

under the antitrust laws."). The most that can be said about what the legislature intended regarding agreements between rural PHDs is that the legislature wanted to protect collaborative, i.e., anticompetitive, agreements between rural PHDs from antitrust challenges. It does not follow that the legislature intended to require rural PHDs to obtain the permission of other rural PHDs before offering health care services, as the majority concludes.

In sum, I disagree with the majority's conclusion that a rural PHD does not have authority to provide health care services in another rural PHD without permission. RCW 70.44.060(3) expressly grants this power to both rural and nonrural PHDs. The majority incorrectly concludes that RCW 70.44.060(3) is ambiguous and that the legislature intended to prevent rural PHDs from operating within one another's territories. I conclude that United General did not satisfy the first factor necessary to obtain a writ of prohibition, i.e., proof that Skagit Valley exceeded its jurisdiction. I would hold the opposite. I would hold that the Skagit Valley commissioners properly found it "necessary and expedient," RCW 70.44.060(3), to operate a facility in United General's boundaries because the clinic in question was part of a larger acquisition on the part of Skagit Valley. I would remand for entry of judgment in favor of Skagit Valley.

### 3. Limiting Authority Only of Rural PHDs

The final disagreement I have with the majority opinion is that it reads into the statutory scheme a limit that is not supported by the language of the statutes. *See* majority at 13 n.4 ("Because Skagit Valley and United General are both rural PHDs, we limit our decision to rural PHDs.").[4]

First, the language of RCW 70.44.060(3) makes no distinction between rural and nonrural PHDs. In order to limit the authority of rural PHDs—but not nonrural PHDs—the majority again looks outside the language of the statute to the statement of legislative intent. Even if RCW 70.44.060(3) were ambiguous, there is no reason to think that the legislature intended to limit the authority of rural PHDs (but not nonrural PHDs) simply because the legislature created a safe harbor for rural PHDs to enter into cooperative agreements without fear of antitrust violations. *See* RCW 70.44.450 (allowing rural PHDs to enter into anticompetitive arrangements with other rural PHDs "in order to provide for the health care needs of the people"). Merely giving rural PHDs additional powers in RCW 70.44.450

---

[4]This limitation is urged by amicus King County Public Hospital District No. 2. It should be noted that amicus suggests this limitation only if the court were to affirm the trial court. King County PHD No. 2's principal argument is that both nonrural and rural PHDs may operate within the boundaries of another PHD without permission.

13

does not diminish their authority under RCW 70.44.060. The majority's limitation

is contrary to the language of the statute and the intent of the legislature.[5]

Moreover, the majority opinion operates to revive the general rule stated in

*Alderwood* and McQuillin—i.e., two municipal corporations cannot

simultaneously exercise the same functions in the same territory—but then applies

this rule only to rural PHDs. Majority at 5-6 (citing 2 EUGENE MCQUILLIN, THE

LAW OF MUNICIPAL CORPORATIONS § 7:8 (3d rev. ed. 2006)).[6] The majority's

holding essentially carves out an exception that protects rural PHDs from

competition from other rural PHDs, but does not extend its rule to urban PHDs and

private health care providers. Indeed, under the majority's holding, any nonrural

PHD could theoretically purchase and operate a medical clinic within United

General's boundaries without United General's permission. If the concern is to

protect rural PHDs from competition, then the majority's holding does not go

nearly far enough.

---

[5] The majority justifies limiting its holding to rural PHDs on the grounds of judicial restraint. Majority at 13 n.4 ("We . . . leav[e] for another day and a properly presented case the decision as to whether nonrural PHDs are subject to a similar restriction."). The question presented in this case, however, is the proper interpretation of RCW 70.44.060(3)—a statute that applies equally to rural and nonrural PHDs. Both parties address this question of statutory interpretation. Although it is true that Skagit Valley and United General are both rural PHDs, the analysis of RCW 70.44.060(3) falls squarely within the questions presented for consideration. Creating exceptions to unambiguous statutory language that was meant to apply equally to rural and nonrural PHDs is not an example of judicial restraint.

[6] The majority cites to both *Alderwood* and McQuillin for the same proposition of law but fails to reconcile their differences. *Compare Alderwood*, 62 Wn.2d at 321 (general rule has been "virtually emasculated" in Washington), *with* MCQUILLIN, *supra*, at 500 (general rule is "firmly established").

14

Finally, limiting the holding to apply only to rural PHDs will be ineffective in protecting rural PHDs from competition when urban PHDs and private health care providers are free to operate in a rural PHD without the PHD's permission.

## Conclusion

I would vacate United General's writ of prohibition because the trial court erroneously concluded that (1) Skagit Valley exceeded its jurisdiction and (2) United General did not have the ability to pursue alternative legal procedures. Because I do not think that Skagit Valley exceeded its jurisdiction under RCW 70.44.060(3), I would remand for entry of judgment in favor of Skagit Valley.

Madsen, C.J. _____

No. 86796-8

STEPHENS, J. (concurring in dissent)—The authority of a public hospital district under RCW 70.44.060(3) is an important question of health care policy in Washington. But from a judicial perspective, an equally important question concerns the authority of a court to issue an extraordinary writ of prohibition. I tend to agree with the majority that reasonable minds could disagree about the meaning of RCW 70.44.060(3). However, I do not find it necessary to provide a definitive interpretation. Regardless of whether Skagit Valley Hospital exceeded its statutory authority, the trial court abused its discretion in granting the writ of prohibition because adequate legal remedies were available to United General Hospital. I therefore concur in that portion of Chief Justice Madsen's dissent explaining that the availability of an action for injunctive relief precluded the drastic remedy of a writ of prohibition.

Stephens, J.