YU, J. (dissenting)
¶51 I agree with the lead opinion that RCW 36.23.020 gives superior court judges authority to order a county clerk to file a supplemental bond that may exceed the initial bond required by RCW 36.16.050(3). However, I disagree with the lead opinion's conclusion that the only limitation on this statutory authority is the judges' subjective belief that a supplemental bond is appropriate. I would hold that the respondent superior court judges in this case exceeded their statutory authority by ordering petitioner Janelle Riddle to double the amount of her official bond as a condition of maintaining her elected office without any prior notice or opportunity to be heard.[1] In light of the extraordinary circumstances presented, I would also hold that the extraordinary remedy of prohibition is appropriate.[2] I therefore respectfully dissent.
*657 ANALYSIS
A. Procedural safeguards are necessary before ordering a county clerk to file a supplemental bond pursuant to RCW 36.23.020
¶52 I agree with the parties that the superior court judges' "jurisdiction" to order a clerk to file a supplemental bond depends on the scope of the judges' statutory authority to do so. See lead opinion at 650-51. And I agree with the lead opinion that the source of the judges' statutory authority is RCW 36.23.020. Id . However, I respectfully disagree with the lead opinion's interpretation of the scope of that authority.
¶53 RCW 36.23.020 provides in full:
When the judge or judges of any court, or a majority of them, believe that the clerk of the court does not have a good and sufficient bond on file, or that the bond is not large enough in amount, such judge or judges shall enter an order requiring him or her, within such time as may be specified in the order, to execute and present to them a good and sufficient bond, in such sum as may be fixed by the order. In case of his or her failure to file the bond within ten days from the expiration of the date fixed the judge or judges shall declare the office vacant.
Read literally and in isolation, this statute appears to give superior court judges unlimited authority to order an independently elected county clerk to file a supplemental bond in any amount and at any time, so long as the judges "subjectively believe[ ]" the clerk's existing bond is insufficient. Lead opinion at 652. But when interpreting statutes, "[t]he court's fundamental objective is to ascertain and carry out the Legislature's intent." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002). To fulfill this objective, we must consider "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Id. at 11, 43 P.3d 4. In addition, "[a]s a rule of statutory interpretation, courts construe statutes to avoid 'absurd or strained consequences'." Wright v. Engum, 124 Wash.2d 343, 351, 878 P.2d 1198 (1994) (quoting In re Eaton, 110 Wash.2d 892, 901, 757 P.2d 961 (1988) ). There are several related statutes we must consider here that shed light on the legislature's intent and that require us to give RCW 36.23.020 a reasonable, contextualized interpretation that avoids absurd results.
¶54 Particularly important is RCW 36.16.050. I agree with the lead opinion that this statute does not apply directly to the supplemental bond at issue here because RCW 36.16.050 addresses only the bond that must be filed by "[e]very county official before he or she enters upon the duties of his or her office." See lead opinion at 651. Nevertheless, RCW 36.16.050 is a related statute that clearly shows the legislature intended to limit and control the costs of official bonds. It would directly conflict with this legislative intent to hold that superior court judges have unlimited authority to order supplemental bonds pursuant to RCW 36.23.020, allowing for potentially absurd consequences.
¶55 The premiums on official bonds for county officers are paid by the county. RCW 48.28.040. For many decades, there were no clear limits on the size of the official bond a county clerk must file before taking office. See LAWS OF 1969, 1st Ex. Sess., ch. 176, § 91; LAWS OF 1895, ch. 53, § 2. That changed in 1971, when the legislature explicitly limited the initial bond required for the office of the county clerk. LAWS OF 1971, ch. 71, § 1. This limitation was expected to save $ 1,800 a year (in 1971 dollars) in Pierce County alone. HOUSE JOURNAL , 42d Leg., Reg. Sess., at 765 (Wash. 1971). Consistent with this history, RCW 36.16.050(3) now provides that a county clerk's initial bond must be in an
[a]mount to be fixed in a penal sum not less than double the amount of money liable to come into his or her hands and sureties to be approved by the judge or a majority of the judges presiding over the court of which he or she is clerk: PROVIDED, That the maximum bond fixed for the clerk shall not exceed in amount that required for the treasurer in the same county.
(Emphasis added.)
¶56 The language and history of RCW 36.16.050(3) thus clearly shows the legislature's *658 intent to control the costs of official bonds for county clerks by limiting the bond amount required. This legislative intent would be easily frustrated if RCW 36.23.020 provides superior court judges with unlimited authority to require the clerk to file a supplemental bond in any amount and at any time based solely on the judges' subjective belief.
¶57 For instance, a supplemental bond could be ordered shortly after the elected clerk takes office in any amount the judges believe is appropriate, leaving the clerk with two options: file the supplemental bond as ordered or refuse to file the bond and be removed from office. The former course of action cannot be what the legislature intended because it would directly undermine the legislature's intent to control the costs of clerks' official bonds. Meanwhile, the latter course of action would directly undermine the will of the voters who just elected the clerk. This also cannot be what the legislature intended because "[w]hen the voters choose an elected official, they necessarily choose who will be responsible for the duties of that office." State ex rel. Banks v. Drummond, 187 Wash.2d 157, 179, 385 P.3d 769 (2016).
¶58 To prevent such absurd consequences, I would hold that before superior court judges exercise their statutory authority to order a supplemental bond pursuant to RCW 36.23.020, they must observe certain procedural safeguards to ensure that their belief that the clerk's bond is insufficient is objectively well founded and that the amount of the supplemental bond is reasonably necessary.[3] Therefore, when a supplemental bond order is issued without prior procedural safeguards, the order is in excess of the judges' statutory authority. Cf. Christensen v. Ellsworth, 162 Wash.2d 365, 372, 173 P.3d 228 (2007) ("any noncompliance with the statutory method of process precludes the superior court from exercising subject matter jurisdiction over the unlawful detainer proceeding").
¶59 To define the necessary procedural safeguards, I would look to the related provisions in RCW 42.08.110 and 42.08.120. Those statutes provide that where a county officer's bond appears insufficient, the board of county commissioners must "summon any such officer to appear before them at a stated time, not less than five days after service of such summons, and show cause why he or she should not execute an additional official bond with good and sufficient sureties." RCW 42.08.110. An additional bond may be ordered only "if after examination the board of county commissioners shall be of opinion that the bond of such officer has become insufficient from any cause whatever." RCW 42.08.120. These procedures are mandatory, and "[u]ntil such hearing and determination have been had," a county officer cannot be ousted on the basis that his or her office has allegedly become vacant due to an insufficient bond. State ex rel. Austin v. Superior Court, 2 Wash.2d 46, 51, 97 P.2d 171 (1939).
¶60 In the case of county clerks, the decision to order a supplemental bond ultimately rests with the superior court judges rather than the board of county commissioners. RCW 36.23.020. However, that is the only relevant difference apparent to me. It would be absurd to hold that based solely on the identity of the decision-maker, clerks are the only county officials who have no right to prior notice or an opportunity to be heard. I would therefore hold that county clerks are entitled to the same procedural safeguards other county officials receive before being ordered to file supplemental bonds as a condition of maintaining office.
¶61 Riddle was afforded no procedural safeguards here. She was given no prior notice or opportunity to be heard on the need for a supplemental bond or the amount that should be required. I would therefore hold that the supplemental bond order exceeded the superior court judges' statutory authority.
B. A writ of prohibition is the appropriate remedy
¶62 As the lead opinion notes, "the Judges do not address whether an alternative legal *659 remedy exists." Lead opinion at 653. Therefore, Riddle has never had an opportunity to respond to the lead opinion's conclusion that she should have sought declaratory and injunctive relief instead of a writ of prohibition. Moreover, I have serious doubts as to whether declaratory and injunctive relief would be a plain, speedy, and adequate remedy in this case. I would therefore hold that a writ of prohibition is appropriate.
¶63 " '[W]hat constitutes a plain, speedy, and adequate remedy is not dependent upon any general rule, but upon the facts of each particular case.' " Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1, 177 Wash.2d 718, 730, 305 P.3d 1079 (2013) (quoting State ex rel. O'Brien v. Police Court, 14 Wash.2d 340, 348, 128 P.2d 332 (1942) ). The facts of this particular case are apparently unprecedented.
¶64 RCW 36.23.020 has existed virtually unchanged since 1895, and I am not aware of any Washington appellate case that has ever cited it, much less interpreted it. Yet Riddle was presented with a signed order and letter, purportedly issued pursuant to this obscure statute, informing her that she must secure a supplemental bond for $ 200,000 and that "failure to provide the supplemental bond as ordered will require Yakima County Superior Court to declare your position vacant." Agreed Statement of Facts & R. Pursuant to RAP 16.2(d), Ex. 6, at 2. When Riddle protested, the judges' response simply stated that "[t]he judges' position has not changed" and then cited a single case addressing an entirely separate issue of whether a county prosecutor may bring a quo warranto action to oust a county commissioner where a judgment had previously been entered against the commissioner for breaching a condition of his official bond. Id. Ex. 9, at 1 (citing State ex rel. Austin v. Superior Court , 6 Wash.2d 61, 106 P.2d 1077 (1940) ). Riddle must have some mechanism to challenge the judges' extraordinary actions, and I have concerns about the adequacy of declaratory and injunctive relief under the circumstances presented.
¶65 First, as the lead opinion correctly notes, in order to obtain a preliminary injunction, Riddle would have to show she has " 'a clear legal or equitable right' " to maintain her elected office. Lead opinion at 654 (internal quotation marks omitted) (quoting Tyler Pipe Indus., Inc. v. Dep't of Revenue, 96 Wash.2d 785, 792, 638 P.2d 1213 (1982) ). However, I am doubtful that Riddle has a clear equitable right based on her "expectation of holding her elected office until the expiration of her term." Id.
¶66 This court has previously observed that " '[o]fficers are elected not for the benefit of the individuals, but for the benefit of the community.' " State ex rel. Zempel v. Twitchell, 59 Wash.2d 419, 430, 367 P.2d 985 (1962) (quoting State ex rel. Lysons v. Ruff, 4 Wash. 234, 243, 29 P. 999 (1892) ). As such, "[p]ublic officials can and should be removed, irrespective of detriment to the individuals involved if the interests of the community so require," such as where a public official has been convicted of a crime, even if the official's criminal appeal is still pending. Id. (emphasis added). Thus, to me, whether Riddle has an equitable right is at best unclear, which would seem to preclude the issuance of a preliminary injunction.[4]
¶67 Second, while I agree with the lead opinion that delay and inconvenience are generally not grounds to hold that alternative legal remedies are inadequate, we have discretion to consider such factors based on the particular circumstances presented. See lead opinion at 652. After all, "[t]he complete absence of any 'other remedy' is not strictly required," and we must consider whether other legal remedies are " 'plain' " and " 'speedy,' " as well as adequate. Id. (quoting State ex rel. W Canadian Greyhound Lines, Ltd. v. Superior Court, 26 Wash.2d 740, 747-48, 175 P.2d 640 (1946) ; O'Brien, 14 Wn.2d at 348, 128 P.2d 332 ). The circumstances presented here indicate that the delay and difficulty of seeking declaratory and injunctive relief, which the lead opinion acknowledges, *660 could actually deprive Riddle of redress. See id. at 654.
¶68 The order requiring Riddle to secure a supplemental bond was dated May 4, 2018, was served on May 7, 2018, and set the deadline for compliance as June 6, 2018. Agreed Statement of Facts & R. Pursuant to RAP 16.2(d), Ex. 5, at 1, Ex. 6, at 2, Ex. 7, at 1. The accompanying letter made it clear that the judges intended to declare Riddle's office vacant if she did not timely comply. Id. Ex. 6, at 2. If Riddle's office were declared vacant and a successor appointed, even erroneously, Riddle likely would have no possibility of regaining her office, just as a county commissioner whose office was statutorily forfeited on conviction of a felony could not be restored to his position after the conviction was reversed on appeal. State ex rel. Guthrie v. Chapman, 187 Wash. 327, 329-32, 60 P.2d 245 (1936) ; see also RCW 36.16.110(1) (county official appointed to fill a vacancy "shall hold office until the next general election"). The risk that this would occur is particularly high because, as noted above, I have doubts as to whether Riddle could obtain a preliminary injunction. Thus, in this particular case, delay would not have been merely inconvenient; it could have deprived Riddle of any remedy, even if she ultimately prevailed on the merits.
¶69 Whether there is a plain, speedy, and adequate legal remedy available " 'rests in the sound discretion of the court in which the proceeding is instituted.' " Skagit County, 177 Wash.2d at 730, 305 P.3d 1079 (quoting O'Brien, 14 Wash.2d at 348, 128 P.2d 332 ). Given the extraordinary circumstances presented by this case, the fact that the superior court judges do not contend that Riddle should have sought declaratory and injunctive relief, and the likelihood that following such a path could not provide an adequate remedy, this court should exercise its discretion to hold that declaratory and injunctive relief is not a plain, speedy, or adequate remedy here. The writ of prohibition should issue.
CONCLUSION
¶70 Riddle did not receive any procedural safeguards before the superior court judges ordered her to file a supplemental bond as a condition of maintaining her elected office. I would therefore hold the judges acted in excess of their statutory authority and Riddle is entitled to a writ of prohibition. I respectfully dissent.
Madsen, J.
Fairhurst, C.J.

Wash. Const. art. IV, § 26.

Since filing this petition, Riddle lost her bid for reelection and is no longer the Yakima County clerk. However, no party has suggested this case should be dismissed as moot. Therefore, like the lead opinion, I address this case as a live controversy.

I do not mean to suggest that the supplemental bond ordered here is not based on an objectively well-founded belief or is not in a reasonable amount. Those questions are unnecessary to my resolution of this case, and I express no opinion on them. I therefore agree with the lead opinion that the judges' motion to supplement the record should be denied. See lead opinion at 654-55.

Additionally, in connection with Riddle's constitutional due process argument, the judges contend she has no legally protected property interest in her elected office. Resp'ts' Resp. to Pet. against State Officers at 8-9. However, because the lead opinion does not contend Riddle has a clear legal right to maintain her elected office, I do not address that issue.