

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE **APR 2 5 2019**
~~Fairhurst . CJ~~
*CHIEF JUSTICE*

This opinion was
filed for record
at 8:00 on 4-25-2019

~~Susan L. Carlson~~
Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JANELLE RIDDLE, Yakima County Clerk, | ) | |
| | ) | No. 95959-5 |
| Petitioner, | ) | |
| | ) | En Banc |
| v. | ) | |
| | ) | |
| DAVID A. ELOFSON, KEVIN S. NAUGHT, | ) | Filed **APR 2 5 2019** |
| MICHAEL G. MCCARTHY, DOUGLAS L. | ) | |
| FEDERSPIEL, BLAINE G. GIBSON, | ) | |
| RUTH E. REUKAUF, GAYLE M. | ) | |
| HARTHCOCK, and RICHARD H. | ) | |
| BARTHFIELD, Judges of the Superior | ) | |
| Court of the State of Washington for | ) | |
| Yakima County, | ) | |
| | ) | |
| Respondents. | ) | |

WIGGINS, J.—This case concerns the statutory authority of superior court judges to order a county clerk to procure a supplemental bond as a condition for maintaining her elected office. The Yakima County Superior Court bench ordered Yakima County Clerk Janelle Riddle to obtain an additional bond and warned that failure to comply would result in the court's declaring her office vacant. Riddle sought a writ of prohibition from this court to prevent enforcement of the order.

We deny the writ of prohibition. The Yakima County judges did not exceed their jurisdiction by issuing the supplemental bond order, and Riddle could have availed herself of a plain, speedy, and adequate remedy at law—an injunction. Thus,

prohibition will not lie. Further, we deny the Yakima County judges' motion to supplement the record.

## FACTS & PROCEDURE

Riddle was elected clerk of Yakima County in 2014. Her term of office ran from January 1, 2015, through December 31, 2018. The month she took office, Riddle obtained a public official's bond, issued by Western Surety Company, of $200,000.

Riddle's tenure as clerk was not without conflict. In addition to a recall attempt, *In re Recall of Riddle*, 189 Wn.2d 565, 403 P.3d 849 (2017), the state auditor issued reports in 2015, 2016, and 2017, detailing financial deficiencies in Riddle's office. The reports identify, among other things, monthly bank account reconciliation problems and unbilled jury services estimated at $44,500; untimely transmittals of child support orders, resulting in $206,500 lost reimbursement to the county; and misappropriation of funds.

Based in part on the auditor's reports and concern that Riddle's existing bond was insufficient to cover potential claims against the clerk's office, a majority of the Yakima County Superior Court bench[1] (the Judges) issued an ex parte order requiring Riddle to "secure and provide proof" of an additional bond for $200,000, increasing her office's bond coverage to $400,000. Accompanying the order was a letter from presiding Judge David Elofson, advising Riddle that failure to comply by June 6, 2018,

---

[1] The Yakima County Superior Court judges include Kevin Naught, Michael McCarthy, David Elofson, Ruth Reukauf, Gayle Harthcock, and Richard Barthfield. Judges Douglas Federspiel and Blaine Gibson did not sign the order.

2

would result in the superior court's declaring her position "vacant" under RCW 36.23.020.

Riddle's counsel wrote to the Judges, arguing that the order was without legal authority. Riddle asked that the order be withdrawn or vacated. Presiding Judge Elofson responded that the clerk's office would be declared vacant unless a supplemental bond was secured.

In June 2018, Riddle filed in this court for a writ of prohibition against the Judges. The petition asserted that the supplemental bond order exceeded the superior court bench's statutory authority and that its ex parte issuance deprived Riddle of proper notice and opportunity to be heard, in violation of due process. Riddle also moved to stay the order pending a decision on her petition and for accelerated review, which was granted.

On accelerated consideration, Supreme Court Commissioner Michael Johnston dismissed Riddle's action for failure to show the superior court lacked jurisdiction or acted in excess of its jurisdiction to warrant a writ of prohibition. We granted discretionary review and retained the petition for determination, maintaining the stay issued by our commissioner. Riddle and the Judges submitted an agreed statement of facts and record. The Judges submitted a nonagreed statement of facts to which Riddle objected. We passed determination of the Judges' motion to the merits.

## BACKGROUND

We are asked to decide whether to issue a writ of prohibition against the Judges of the Yakima County Superior Court. The state Supreme Court has original

3

jurisdiction in prohibition actions against state officers. WASH. CONST. art. IV, § 4; RAP 16.2(a). A superior court judge is a state officer for the purposes of original prohibition jurisdiction. *State ex rel. Edelstein v. Foley,* 6 Wn.2d 444, 448, 107 P.2d 901 (1940); WASH. CONST. art. IV, § 4. A county clerk is also the clerk of the superior court. WASH. CONST. art. IV, § 26.

Prohibition is an ancient writ, dating from the 12th century. JAMES L. HIGH, EXTRAORDINARY LEGAL REMEDIES 707 (3d ed. 1896). It has survived as one of the few remaining artifacts of the English writ system. WASH. CONST. art. IV, § 4; RAP 16.1(b), 16.2; RCW 7.16.290; HIGH, *supra,* at 707. A kind of "'common-law injunction against governmental usurpation,'" the writ of prohibition is a legal order typically issued from a superior court to prevent an inferior court from exceeding its jurisdiction. BLACK'S LAW DICTIONARY 1405 (10th ed. 2014) (defining "writ of prohibition" (quoting BENJAMIN J. SHIPMAN, HANDBOOK OF COMMON-LAW PLEADING § 341, at 542 (3d ed. 1923))); *Winsor v. Bridges,* 24 Wash. 540, 542, 64 P.780 (1901); *see also* HIGH, *supra,* at 715; David W. Raack, *A History of Injunctions in England before 1700,* 61 IND. L.J. 539, 545 (1986).[2]

The writ is an extraordinary remedy[3] to be used with "great caution and forbearance, for the furtherance of justice and to secure order . . . in judicial proceedings." HIGH, *supra,* at 709. Washington courts have issued these writs to

---

[2] English common law courts (the King's Bench and Common Pleas) used the writ to keep other, non-common-law courts (ecclesiastical, Admiralty, and equity) within their jurisdictional bounds. CHARLES M. GRAY, THE WRIT OF PROHIBITION: JURISDICTION IN EARLY MODERN ENGLISH LAW, at vii, xxix (1994); HIGH, *supra,* at 707.

[3] The extraordinary remedies also include mandamus, habeas corpus, certiorari, and quo warranto.

prevent an official from encroaching on the jurisdiction of others and to "enlarge the powers of their positions." *County of Spokane v. Local No. 1553, Amer. Fed'n of State, County & Mun. Emps.*, 76 Wn. App. 765, 769-70, 888 P.2d 735 (1995). The writ is preventive rather than corrective. HIGH, *supra*, at 710. It issues to arrest execution of a future, specific act and not to undo an action already performed. *Local No. 1553*, 76 Wn. App. at 769-70; HIGH, *supra*, at 710-11.

Whether a writ will issue is a narrow inquiry. A court looks not to the nature or extent of injury but to the question of power and jurisdiction of an inferior court. HIGH, *supra*, at 714. A writ of prohibition will not issue to prevent the commission of error, take the place of an appeal, or serve as a writ of review for the correction of an error. *State ex rel. N.Y. Cas. Co. v. Superior Court*, 31 Wn.2d 834, 838-39, 199 P.2d 581 (1948) (citing cases in support).

## ANALYSIS

With these historical considerations in mind, we turn to merits of the issues presented. We first determine whether Riddle has met the requirements for a writ of prohibition to issue. As explained below, we hold that she has not. Accordingly, we deny her petition. In addition, we decline to reach Riddle's due process argument because we can resolve the case on nonconstitutional grounds. Finally, we deny the Judges' motion to supplement the record.

I.     Writ of Prohibition

We begin our analysis with the elements of prohibition. Courts may issue a writ of prohibition "only when two conditions are met: '(1) [a]bsence or excess of jurisdiction,

and (2) absence of a plain, speedy, and adequate remedy in the course of legal procedure.'" *Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1*, 177 Wn.2d 718, 722-23, 305 P.3d 1079 (2013) (alteration in original) (quoting *Kreidler v. Eikenberry*, 111 Wn.2d 828, 838, 766 P.2d 438 (1989)). Although the common law writ of prohibition restrains the unauthorized exercise of judicial or quasi-judicial power, the statutory writ of prohibition applies to executive, administrative, and legislative acts as well. *Id.* at 723. The instant petition seeks to restrain judicial action; therefore, we are concerned only with common law prohibition.

A. The Judges did not act in excess of their jurisdiction

We first consider whether the Judges exceeded their jurisdiction. Both parties offer statutory-based answers to this question: the Judges contend they did not act in excess of their jurisdiction because they had authority under RCW 36.23.020 to issue the supplemental bond order. Riddle responds that such an argument conflicts with RCW 36.16.050. Both arguments evaluate jurisdiction and statutory authority as fundamentally the same concept. Assuming without deciding they are equivalent for the purposes of this case, we must then decide whether RCW 36.23.020 provides the required authority. We hold that it does.

The application and interaction of RCW 36.23.020 and RCW 36.16.050 appears to be an issue of first impression in Washington. The meaning of these statutes is a question of law, which we review de novo, considering the statutory scheme as a whole. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

RCW 36.23.020 provides,

When the judge or judges of any court, or a majority of them, believe that the clerk of the court does not have a good and sufficient bond on file, or that the bond is not large enough in amount, such judge or judges shall enter an order requiring him or her, within such time as may be specified in the order, to execute and present to them a good and sufficient bond, in such sum as may be fixed by the order. In case of his or her failure to file the bond within ten days from the expiration of the date fixed the judge or judges shall declare the office vacant.

Riddle counters that RCW 36.23.020 cannot provide unfettered authority to order additional bond coverage when another, related provision, RCW 36.16.050, establishes the maximum amount of a clerk's bond.

RCW 36.16.050 states,

Every county official *before he or she enters upon the duties of his or her office* shall furnish a bond conditioned that he or she will faithfully perform the duties of his or her office and account for and pay over all money which may come into his or her hands by virtue of his or her office . . . . Bonds of elective county officers shall be as follows:

. . . .

(3) Clerk: Amount to be fixed in a penal sum not less than double the amount of money liable to come into his or her hands and sureties to be approved by the judge or a majority of the judges presiding over the court of which he or she is clerk: PROVIDED, That the *maximum bond fixed for the clerk shall not exceed in amount that required for the treasurer in the same county*;

. . . .

(8) Treasurer: Sureties to be approved by the proper county legislative authority and the amounts to be fixed by the proper county legislative authority at double the amount liable to come into the treasurer's hands during his or her term, the maximum amount of the bond, however, not to exceed:

(a) In each county with a population of two hundred ten thousand or more, two hundred fifty thousand dollars.

(Emphasis added.) Here, the Yakima County treasurer's bond is set at $250,000. Riddle argues that securing $200,000 in addition to her original $200,000 bond would result in $400,000 in coverage—clearly in excess of the prescribed $250,000 "maximum amount" under RCW 36.16.050(3) and (8).

Riddle also contends that the Judges' use of RCW 36.23.020 renders RCW 36.16.050 meaningless. A bond could be properly approved in the maximum original amount under RCW 36.16.050 and immediately followed by an order to obtain a second bond under RCW 36.23.020 as a condition of remaining in office, thereby flouting RCW 36.16.050's limit.

This reasoning, however, ignores the plain language of both RCW 36.23.020 and RCW 36.16.050. "If the statute's meaning is plain on its face, we give effect to that plain meaning as the expression of what was intended." *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010). "Plain meaning 'is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.' *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). While we look to the broader statutory context for guidance, we 'must not add words where the legislature has chosen not to include them,' and we must 'construe statutes such that all of the language is given effect.'" *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

RCW 36.23.020 does not limit a court's authority to issue a bond order during a specific time period. This provision broadly states that "[*w*]*hen* the judge or judges . . . *believe* that the clerk . . . does not have a good and sufficient bond on file," they may order the clerk to "execute and present to them a good and sufficient bond." (Emphasis added.) Simply put, a judge may order a clerk to obtain additional bond coverage at any point in time if that judge subjectively believes a bond to be insufficient. By its plain language, RCW 36.23.020 applies to all county clerk bonds, irrespective of when they were executed.

Nor does RCW 36.16.050 bind a court's authority on this point. As the Judges note, RCW 36.16.050 explicitly pertains to a public official's bond executed "before" entering office—it says nothing about a bond required after taking office. This statute directs county officials to execute bonds according to certain conditions, such as tying the amount of a clerk's bond to the amount of a treasurer's bond. Further, this statute applies in only one instance: an official bond acquired prior to entering office. RCW 36.16.050(3), (8). The plain language of RCW 36.16.050 speaks only to the duties of county officials and the bonds they must obtain as a precondition upon entering elected office.

When read together, the provisions do not conflict because they speak to different actors and different subject matter. RCW 36.16.050 focuses solely on county officials and conditions of their first, official bonds. RCW 36.23.020 is directed at judges and provides authority to scrutinize any bond, regardless of whether it was

9

acquired before or after taking office. We will not add limiting language to RCW 36.23.020 where the legislature did not intend it. *Lake,* 169 Wn.2d at 526.

Here, the Judges properly relied on RCW 36.23.020 to issue their supplemental bond order. Accordingly, the Judges did not act without or in excess of their jurisdiction.

### B. A plain, speedy, and adequate remedy in the course of legal procedure existed

We turn next to the second prong needed to obtain a writ of prohibition—that no plain, speedy, and adequate remedy exists in the course of legal procedure. *Eikenberry,* 111 Wn.2d at 838; RCW 7.16.300.

"The question as to what constitutes a plain, speedy, and adequate remedy is not dependent upon any general rule, but upon the facts of each particular case, and its determination therefore rests in the sound discretion of the court in which the proceeding is instituted." *State ex rel. O'Brien v. Police Court,* 14 Wn.2d 340, 348, 128 P.2d 332 (1942); *see also* HIGH, *supra,* at 709 (stating that the writ is "one of sound judicial discretion, to be granted or withheld according to the circumstances of each particular case"). A remedy is not inadequate merely because it is attended with delay, expense, annoyance, or even some hardship. *State ex rel. O'Brien,* 14 Wn.2d at 347-48. Something in the nature of the action must make it apparent that the rights of the litigants will not be protected or full redress will not be afforded without the writ. *Id.*

The complete absence of any "other remedy" is not strictly required. *State ex rel. W. Canadian Greyhound Lines, Ltd. v. Superior Court,* 26 Wn.2d 740, 747-48, 175 P.2d 640 (1946). The operative word of the second prong is the "adequacy" of the

10

remedy available. *W. Canadian Greyhound Lines,* 26 Wn.2d at 749 ("'it is the *adequacy* of the remedy by appeal, *not its mere existence,* which defeats the right to a writ of prohibition'" (quoting 5 BANCROFT'S CODE PRACTICE AND REMEDIES § 4043, at 5307-08 (1928))). Admittedly, *Western Greyhound* and *Bancroft's Remedies* discuss the adequacy of the legal remedy of an appeal specifically, and not remedies generally. Nevertheless, the *Western Greyhound* court recognized the "adequacy" of a legal remedy as a consideration in prohibition. *Id.* at 749; *see also* HIGH, *supra,* at 719-20 ("if it is manifest than an appeal from the action of the court would afford an *inadequate remedy,* the right of appeal does not, of itself, afford sufficient ground for refusing relief by prohibition ." (emphasis added)).

Reviewing the "adequacy" of an alternative legal remedy is underscored by our case law explaining that "what constitutes a plain, speedy, and adequate remedy *is not dependent upon any general rule,* but upon the facts of each particular case." *State ex rel. O'Brien,* 14 Wn.2d at 347-48 (emphasis added). Moreover, the historical writs of prohibition were issued by common law courts to restrain the jurisdictional encroachment of equity courts. *See supra* at 3-4.[4] Thus, the mere existence of an equitable remedy does not necessarily defeat the common law writ of prohibition.

---

[4] The complicating factor in this discussion ultimately lies in the Anglo-American court system's procedural unification of common law and equity. 30A C.J.S. *Equity* § 1 (2007) ("[t]he formalism distinguishing law and equity is largely historical"); *In re Welfare of Hudson,* 13 Wn.2d 673, 697-98, 126 P.2d 765 (1942) ("the superior courts of this state are courts of general jurisdiction and have power to hear and determine all matters legal and equitable"). The consequences of this unification for the purposes of the common law writ of prohibition have not been comprehensively explored.

HIGH, *supra*, at 716 ("it is always a sufficient reason for withholding the writ that the party aggrieved has another and complete remedy at law").[5]

Here, the Judges do not address whether an alternative legal remedy exists. Riddle asserts without elaboration that she has no plain, speedy, and adequate remedy available. Pet'r's Suppl. Br. at 7.[6]

Despite her assertions, Riddle could have sought relief through a preliminary injunction and declaratory judgment. *See* CR 65 (governing preliminary injunctions); CR 57; RCW 7.24.010-.190 (Uniform Declaratory Judgments Act). These mechanisms could have satisfied the relief Riddle seeks via a writ of prohibition: to enjoin enforcement of the order and determine whether RCW 36.23.020 authorized issuance of the order.

---

[5] Some cases have indicated that all that is required is the *existence* of an alternative form of relief, rather than the adequacy of the relief. *See, e.g., Local No. 1553,* 76 Wn. App. at 770-71 (denying writ when applicants could seek an injunction); *Consol. Disposal Servs., Inc. v. Grant County,* 51 Wn. App. 652, 657, 754 P.2d 1059 (1988) (quashing a writ of prohibition in part because the petitioner arguably could have obtained damages and injunctive relief). These decisions imply that the correct test for the second requirement for prohibition is not whether a petitioner could be successful in an alternative legal procedure but whether any other legal procedure is *available. See Skagit County,* 177 Wn.2d at 733 (Madsen, C.J., dissenting). In light of our focus on adequacy in numerous other situations, however, this does not appear to be the correct way to evaluate the second prong of the writ of prohibition.

[6] The dissent contends that because the Judges did not address whether an alternative legal remedy existed, Riddle never had an opportunity to respond to our conclusion that she could have sought an injunction instead of a writ of prohibition. Dissent at 7. But this misconstrues the requirements of a writ of prohibition. The burden of proof in prohibition rests on the petitioner. *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 384, 74 S. Ct. 145, 98 L. Ed. 106 (1953) (quoting *United States v. Duell,* 172 U.S. 576, 582, 19 S. Ct. 286, 43 L. Ed. 559 (1899) (noting that the petitioner failed to meet its burden to issue a writ of prohibition)). The petitioner must show that the public official against whom the writ is sought acted without or in excess of jurisdiction and that no adequate alternative remedy existed. *Skagit County,* 177 Wn.2d at 722-23. Thus, the question is not whether Riddle had an opportunity to respond to the conclusion that she should have sought an injunction—it was her burden to show her lack of an adequate alternative remedy in the first instance to justify issuance of the writ.

To obtain injunctive relief, a party "'must show (1) . . . a clear legal or equitable right, (2) . . . a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury.'" *Tyler Pipe Indus., Inc. v. Dep't of Revenue,* 96 Wn.2d 785, 792, 638 P.2d 1213 (1982) (quoting *Port of Seattle v. Int'l Longshoremen's & Warehousemen's Union,* 52 Wn.2d 317, 319, 324 P.2d 1099 (1958)).

Riddle arguably would succeed in obtaining a preliminary injunction. As a matter of equity, she had the expectation of holding her elected office until the expiration of her term and carrying out the duties for which she was elected. WASH. CONST. art. IV, § 26; RCW 36.16.030 (county clerk is elected by the qualified voters of the county); RCW 2.32.050 (powers and duties of clerks).[7]

Riddle had a well-grounded fear based on the Judges' order informing her that she would be removed as clerk if she did not obtain an additional bond. And the Judges' order, if enforced, would have resulted in actual and substantial injury—her removal from office. *See Tyler Pipe Indus.,* 96 Wn.2d at 792.

Overall, an alternative and adequate legal remedy exists. Riddle could have sought to enjoin the Judges' bond order. While seeking this relief may have proved difficult, likely requiring application to a neighboring county superior court for the

---

[7] The dissent also takes issue with our conclusion that Riddle could have arguably succeeded in obtaining injunctive relief. Dissent at 8-9. The dissent contends that because public officials can be removed from office if they have been convicted of a crime under RCW 42.12.010 regardless of the detriment to those officials, it is unclear whether Riddle has an equitable right to her elected office. Dissent at 9 (quoting *State ex rel. Zempel v. Twitchell,* 59 Wn.2d 419, 430, 367 P.2d 985 (1962)). But this is inapposite. Here, Riddle has not been convicted of any crime nor is RCW 42.12.010 at all implicated.

injunction, annoyance and some delay do not make a remedy inadequate. *State ex rel. O'Brien*, 14 Wn.2d at 347-48. Nor does Riddle's ultimate success on the merits of her claim—whether the Judges had statutory authority to order supplemental bond coverage—show that she had no alternative and adequate remedy. This substantive question of statutory authority would be determined in a declaratory action, which is different from that asked under injunctive relief. The facts of Riddle's case do not show that her rights "will not be protected or full redress will not be afforded without the writ." *City of Kirkland v. Ellis*, 82 Wn. App. 819, 827, 920 P.2d 206 (1996) (citing *State ex rel. O'Brien*, 14 Wn.2d at 347-48).

Because Riddle could have sought the plain, speedy, and adequate remedy of an injunction, the second prong of the writ has not been satisfied. Accordingly, we deny her petition.

II.    Due Process

In addition to her statutory argument, Riddle raises due process concerns with respect to the manner in which she was informed of the Judges' supplemental bond order. We note that the Judges' order allowed Riddle 10 days to respond as provided in RCW 36.23.020, she received conflict-free counsel, and her attorney wrote letters to the Judges advancing her argument that RCW 36.23.020 does not apply.

Nevertheless, we decline to analyze Riddle's due process argument. It is unnecessary to engage in a constitutional inquiry because Riddle cannot obtain a writ of prohibition in this case. Our inquiry here is narrow, and the statutory analysis alone resolves the only question before us. To obtain a writ, a petitioner must satisfy both

14

requirements: excess of jurisdiction and lack of adequate legal remedy. *Skagit County,* 177 Wn.2d at 722-23. As explained in detail above, the Judges acted within their jurisdiction and Riddle could have sought an adequate alternative remedy. Therefore, a writ will not issue. In light of the limited scope of our inquiry and the limited relief available—issuance of the writ—we opine only on that remedy and do not address due process. *Id.; see State v. Hall,* 95 Wn.2d 536, 539, 627 P.2d 101 (1981) (when a case may be resolved on nonconstitutional grounds, the reviewing court need not address the constitutional argument).[8]

III.    Motion To Supplement the Record

The Judges moved to supplement the record, seeking to include two letters from the Board of Yakima County Commissioners. These letters concern notices of claims against the county clerk's office dated June 11, 2018, and July 27, 2018.

Riddle objected to the motion. She argues that the additional facts were not part of the record before the Judges because the letters were sent after the bond order was issued and were not sent to Riddle's surety, Western Surety Company (Agreed Statement of Facts & R. Pursuant to RAP 16.2(d) at 1). This objection misconstrues the nature of the original action in this court. Riddle seeks a writ of prohibition. The record thus consists of facts necessary for our determination of whether to issue the

---

[8] The Judges contend that RCW 36.23.020 provides no procedural safeguards for due process, unlike RCW 42.08.110. This provision states that whenever a surety in the official bond of a county officer becomes "insolvent or insufficient," the board of commissioners must summon the officer to show cause why he or she should not execute an additional bond. RCW 42.08.110. The Judges correctly note that unlike RCW 42.08.110, RCW 36.23.020 provides for no show cause hearing or any other procedure prior to ordering additional bond coverage. While RCW 42.08.110 is informative of a procedure to cure insufficient bond coverage in other contexts, this provision does not control the case at hand.

writ. That the Yakima County commissioners' letters were not before the Judges when issuing their order has no bearing on our decision to grant or deny Riddle's petition.

The Judges contend the letters are necessary because they show that the commissioners have filed claims against Riddle's bond and therefore impaired it, justifying the order for additional bond coverage. *Id.* at 3. But whether Riddle's bond was "impaired" ignores the central question before this court, that is: whether the Judges had statutory authority to order Riddle to acquire a supplemental bond and whether she had an adequate legal remedy. Whether Riddle's current bond is impaired or may be deemed insufficient based on these letters is not relevant to our decision on the writ of prohibition. We therefore deny the Judges' motion.

## CONCLUSION

Riddle does not meet the requirements to obtain a writ of prohibition. The Judges did not exceed their statutory authority by ordering Riddle to secure a second, supplemental bond. Moreover, Riddle could have sought other adequate relief in the course of legal procedure. Consequently, we deny her petition. We decline to reach Riddle's due process argument because we resolve this case on other nonconstitutional grounds. Finally, we deny the Judges' motion to supplement the record.

_____

WE CONCUR.

No. 95959-5

GORDON McCLOUD, J. (concurring)—I agree with the lead opinion that
the first two questions in a case like this, where a petitioner seeks a common law
writ of prohibition, are (1) whether the petitioner has shown that the respondents—
here, the judges of the Yakima County Superior Court—exceeded their
jurisdiction, and (2) whether the petitioner—here, Yakima County Clerk Janelle
Riddle—has another plain, speedy, and adequate remedy.  Lead opinion at 5-6.

I also agree with the lead opinion's answer to those two questions.
Regarding question (1), RCW 36.23.020's plain language provides the "judges"
with the authority to "order" "the clerk of the court" to "execute" a supplemental
bond of the sort at issue here, *id.* at 7-8 (quoting RCW 36.23.020), and RCW
36.16.050 does not diminish that authority. *Id.* at 7-9.  Thus, the petitioner has not
shown that the respondent judges exceeded their jurisdiction.  Regarding question
(2), Riddle has another plain, speedy, and adequate remedy available. *Id.* at 10-13.

1

As a result, I agree with the lead opinion's conclusion that the petition for a writ of prohibition should be denied. *Id.* at 10-13.

I write separately only to express my disagreement with the lead opinion's definitive characterization of the judges' order to the clerk to execute a supplemental bond as "judicial action." Lead opinion at 6 ("The instant petition seeks to restrain judicial action; therefore we are concerned only with [the] common law [writ of] prohibition."). The dissent seems to accept this characterization. *See* dissent at 1-2. But I'm not so sure.

The judges' order to the clerk did not resolve a case or controversy; it was an action on a matter concerning what is partly the administration of the superior court and partly the conduct of a separately elected official, the clerk. That means the action has some attributes of a judicial administrative action. *See In re Salary of Juvenile Dir.*, 87 Wn.2d 232, 242, 552 P.2d 163 (1976) (judicial power "'is not limited to adjudication, but includes certain ancillary functions, such as . . . judicial administration, which are essential if the courts are to carry out their constitutional mandate'" (quoting *O'Coin's, Inc. v. Treasurer of Worcester County*, 362 Mass. 507, 287 N.E.2d 608, 611 (1972))). On the other hand, while the clerk has a role in

2

the judicial branch,[1] it is not clear that the judges' supplemental bond order

affected judicial administration. The order did not secure any additional resources

for the courts or modify any practice within the clerk's office. All it would have

accomplished was procurement of a secondary insurance policy, at county

expense, to protect the county budget. RCW 48.28.040; *see also* Agreed Statement

of Facts & R. Pursuant to RAP 16.2(d), Ex. 6 (letter from the judges detailing their

concerns about possible "losses to Yakima County"). And the finances of the

county are the primary responsibility of the board of commissioners, chapter 36.40

RCW, not the judiciary.

For that reason, I am hesitant to characterize the judges' order to the clerk in

this case as "judicial action."

I therefore respectfully concur in the decision of the lead opinion.

---

[1] WASH. CONST. art. IV, § 26.

Gordon McCloud, J.

No. 95959-5

GONZÁLEZ, J. (concurring in part and dissenting in part)—I agree that the writ of prohibition should be denied. I concur with the lead opinion that the Yakima County Superior Court judges did not exceed their statutory authority by issuing the supplemental bond order. I also agree that the former Yakima County clerk has not shown she lacked a plain, speedy, and adequate remedy at law for any injury. Accordingly, the writ of prohibition does not lie.

However, I would grant the judges' motion to supplement the record because the supplemental material offered is helpful to understand this case and to reach a just result. Therefore, I respectfully concur in part and dissent in part.

González, J.

No. 95959-5

YU, J. (dissenting) — I agree with the lead opinion that RCW 36.23.020

gives superior court judges authority to order a county clerk to file a supplemental

bond that may exceed the initial bond required by RCW 36.16.050(3). However, I

disagree with the lead opinion's conclusion that the only limitation on this

statutory authority is the judges' subjective belief that a supplemental bond is

appropriate. I would hold that the respondent superior court judges in this case

exceeded their statutory authority by ordering petitioner Janelle Riddle to double

the amount of her official bond as a condition of maintaining her elected office

without any prior notice or opportunity to be heard.[1] In light of the extraordinary

circumstances presented, I would also hold that the extraordinary remedy of

prohibition is appropriate.[2] I therefore respectfully dissent.

---

[1] I do not reach the merits of Riddle's constitutional due process argument because it is unnecessary to my resolution of this case. *See* lead opinion at 14-15.

[2] Since filing this petition, Riddle lost her bid for reelection and is no longer the Yakima County clerk. However, no party has suggested this case should be dismissed as moot. Therefore, like the lead opinion, I address this case as a live controversy.

## ANALYSIS

A.   Procedural safeguards are necessary before ordering a county clerk to file a supplemental bond pursuant to RCW 36.23.020

I agree with the parties that the superior court judges' "jurisdiction" to order a clerk to file a supplemental bond depends on the scope of the judges' statutory authority to do so. *See* lead opinion at 6. And I agree with the lead opinion that the source of the judges' statutory authority is RCW 36.23.020. *Id.* However, I respectfully disagree with the lead opinion's interpretation of the scope of that authority.

RCW 36.23.020 provides in full:

When the judge or judges of any court, or a majority of them, believe that the clerk of the court does not have a good and sufficient bond on file, or that the bond is not large enough in amount, such judge or judges shall enter an order requiring him or her, within such time as may be specified in the order, to execute and present to them a good and sufficient bond, in such sum as may be fixed by the order. In case of his or her failure to file the bond within ten days from the expiration of the date fixed the judge or judges shall declare the office vacant.

Read literally and in isolation, this statute appears to give superior court judges unlimited authority to order an independently elected county clerk to file a supplemental bond in any amount and at any time, so long as the judges "subjectively believe[ ]" the clerk's existing bond is insufficient. Lead opinion at 9. But when interpreting statutes, "[t]he court's fundamental objective is to

2

ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell &*
*Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). To fulfill this objective, we must
consider "all that the Legislature has said in the statute and related statutes which
disclose legislative intent about the provision in question." *Id.* at 11. In addition,
"[a]s a rule of statutory interpretation, courts construe statutes to avoid 'absurd or
strained consequences'." *Wright v. Engum*, 124 Wn.2d 343, 351, 878 P.2d 1198
(1994) (quoting *In re Eaton*, 110 Wn.2d 892, 901, 757 P.2d 961 (1988)). There are
several related statutes we must consider here that shed light on the legislature's
intent and that require us to give RCW 36.23.020 a reasonable, contextualized
interpretation that avoids absurd results.

Particularly important is RCW 36.16.050. I agree with the lead opinion that
this statute does not apply directly to the supplemental bond at issue here because
RCW 36.16.050 addresses only the bond that must be filed by "[e]very county
official before he or she enters upon the duties of his or her office." *See* lead
opinion at 9. Nevertheless, RCW 36.16.050 is a related statute that clearly shows
the legislature intended to limit and control the costs of official bonds. It would
directly conflict with this legislative intent to hold that superior court judges have
unlimited authority to order supplemental bonds pursuant to RCW 36.23.020,
allowing for potentially absurd consequences.

3

The premiums on official bonds for county officers are paid by the county. RCW 48.28.040. For many decades, there were no clear limits on the size of the official bond a county clerk must file before taking office. *See* LAWS OF 1969, 1st Ex. Sess., ch. 176, § 91; LAWS OF 1895, ch. 53, § 2. That changed in 1971, when the legislature explicitly limited the initial bond required for the office of the county clerk. LAWS OF 1971, ch. 71, § 1. This limitation was expected to save $1,800 a year (in 1971 dollars) in Pierce County alone. HOUSE JOURNAL, 42d Leg., Reg. Sess., at 765 (Wash. 1971). Consistent with this history, RCW 36.16.050(3) now provides that a county clerk's initial bond must be in an

> [a]mount to be fixed in a penal sum not less than double the amount of money liable to come into his or her hands and sureties to be approved by the judge or a majority of the judges presiding over the court of which he or she is clerk: PROVIDED, That the *maximum bond* fixed for the clerk *shall not exceed* in amount that required for the treasurer in the same county.

(Emphasis added.)

The language and history of RCW 36.16.050(3) thus clearly shows the legislature's intent to control the costs of official bonds for county clerks by limiting the bond amount required. This legislative intent would be easily frustrated if RCW 36.23.020 provides superior court judges with unlimited authority to require the clerk to file a supplemental bond in any amount and at any time based solely on the judges' subjective belief.

4

For instance, a supplemental bond could be ordered shortly after the elected clerk takes office in any amount the judges believe is appropriate, leaving the clerk with two options: file the supplemental bond as ordered or refuse to file the bond and be removed from office. The former course of action cannot be what the legislature intended because it would directly undermine the legislature's intent to control the costs of clerks' official bonds. Meanwhile, the latter course of action would directly undermine the will of the voters who just elected the clerk. This also cannot be what the legislature intended because "[w]hen the voters choose an elected official, they necessarily choose who will be responsible for the duties of that office." *State ex rel. Banks v. Drummond*, 187 Wn.2d 157, 179, 385 P.3d 769 (2016).

To prevent such absurd consequences, I would hold that before superior court judges exercise their statutory authority to order a supplemental bond pursuant to RCW 36.23.020, they must observe certain procedural safeguards to ensure that their belief that the clerk's bond is insufficient is objectively well founded and that the amount of the supplemental bond is reasonably necessary.[3] Therefore, when a supplemental bond order is issued without prior procedural

---

[3] I do not mean to suggest that the supplemental bond ordered here is not based on an objectively well-founded belief or is not in a reasonable amount. Those questions are unnecessary to my resolution of this case, and I express no opinion on them. I therefore agree with the lead opinion that the judges' motion to supplement the record should be denied. *See* lead opinion at 15-16.

safeguards, the order is in excess of the judges' statutory authority. *Cf. Christensen v. Ellsworth*, 162 Wn.2d 365, 372, 173 P.3d 228 (2007) ("any noncompliance with the statutory method of process precludes the superior court from exercising subject matter jurisdiction over the unlawful detainer proceeding").

To define the necessary procedural safeguards, I would look to the related provisions in RCW 42.08.110 and 42.08.120. Those statutes provide that where a county officer's bond appears insufficient, the board of county commissioners must "summon any such officer to appear before them at a stated time, not less than five days after service of such summons, and show cause why he or she should not execute an additional official bond with good and sufficient sureties." RCW 42.08.110. An additional bond may be ordered only "if after examination the board of county commissioners shall be of opinion that the bond of such officer has become insufficient from any cause whatever." RCW 42.08.120. These procedures are mandatory, and "[u]ntil such hearing and determination have been had," a county officer cannot be ousted on the basis that his or her office has allegedly become vacant due to an insufficient bond. *State ex rel. Austin v. Superior Court*, 2 Wn.2d 46, 51, 97 P.2d 171 (1939).

In the case of county clerks, the decision to order a supplemental bond ultimately rests with the superior court judges rather than the board of county

commissioners. RCW 36.23.020. However, that is the only relevant difference apparent to me. It would be absurd to hold that based solely on the identity of the decision-maker, clerks are the only county officials who have no right to prior notice or an opportunity to be heard. I would therefore hold that county clerks are entitled to the same procedural safeguards other county officials receive before being ordered to file supplemental bonds as a condition of maintaining office.

Riddle was afforded no procedural safeguards here. She was given no prior notice or opportunity to be heard on the need for a supplemental bond or the amount that should be required. I would therefore hold that the supplemental bond order exceeded the superior court judges' statutory authority.

B.      A writ of prohibition is the appropriate remedy

As the lead opinion notes, "the Judges do not address whether an alternative legal remedy exists." Lead opinion at 12. Therefore, Riddle has never had an opportunity to respond to the lead opinion's conclusion that she should have sought declaratory and injunctive relief instead of a writ of prohibition. Moreover, I have serious doubts as to whether declaratory and injunctive relief would be a plain, speedy, and adequate remedy in this case. I would therefore hold that a writ of prohibition is appropriate.

"'[W]hat constitutes a plain, speedy, and adequate remedy is not dependent upon any general rule, but upon the facts of each particular case.'" *Skagit County*

7

*Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1*, 177 Wn.2d 718, 730, 305 P.3d 1079 (2013) (quoting *State ex rel. O'Brien v. Police Court,* 14 Wn.2d 340, 348, 128 P.2d 332 (1942)). The facts of this particular case are apparently unprecedented.

RCW 36.23.020 has existed virtually unchanged since 1895, and I am not aware of any Washington appellate case that has ever cited it, much less interpreted it. Yet Riddle was presented with a signed order and letter, purportedly issued pursuant to this obscure statute, informing her that she must secure a supplemental bond for $200,000 and that "failure to provide the supplemental bond as ordered will require Yakima County Superior Court to declare your position vacant." Agreed Statement of Facts & R. Pursuant to RAP 16.2(d), Ex. 6, at 2. When Riddle protested, the judges' response simply stated that "[t]he judges' position has not changed" and then cited a single case addressing an entirely separate issue of whether a county prosecutor may bring a quo warranto action to oust a county commissioner where a judgment had previously been entered against the commissioner for breaching a condition of his official bond. *Id.* Ex. 9, at 1 (citing *State ex rel. Austin v. Superior Court*, 6 Wn.2d 61, 106 P.2d 1077 (1940)). Riddle must have some mechanism to challenge the judges' extraordinary actions, and I have concerns about the adequacy of declaratory and injunctive relief under the circumstances presented.

First, as the lead opinion correctly notes, in order to obtain a preliminary injunction, Riddle would have to show she has "'a clear legal or equitable right'" to maintain her elected office. Lead opinion at 13 (internal quotation marks omitted) (quoting *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982)). However, I am doubtful that Riddle has a clear equitable right based on her "expectation of holding her elected office until the expiration of her term." *Id.*

This court has previously observed that "'[o]fficers are elected not for the benefit of the individuals, but for the benefit of the community.'" *State ex rel. Zempel v. Twitchell*, 59 Wn.2d 419, 430, 367 P.2d 985 (1962) (quoting *State ex rel. Lysons v. Ruff*, 4 Wash. 234, 243, 29 P. 999 (1892)). As such, "[p]ublic officials can and should be removed, *irrespective of detriment to the individuals involved* if the interests of the community so require," such as where a public official has been convicted of a crime, even if the official's criminal appeal is still pending. *Id.* (emphasis added). Thus, to me, whether Riddle has an equitable right is at best unclear, which would seem to preclude the issuance of a preliminary injunction.[4]

---

[4] Additionally, in connection with Riddle's constitutional due process argument, the judges contend she has no legally protected property interest in her elected office. Resp'ts' Resp. to Pet. against State Officers at 8-9. However, because the lead opinion does not contend Riddle has a clear legal right to maintain her elected office, I do not address that issue.

Second, while I agree with the lead opinion that delay and inconvenience are *generally* not grounds to hold that alternative legal remedies are inadequate, we have discretion to consider such factors based on the particular circumstances presented. *See* lead opinion at 10. After all, "[t]he complete absence of any 'other remedy' is not strictly required," and we must consider whether other legal remedies are "'plain'" and "'speedy,'" as well as adequate. *Id.* (quoting *State ex rel. W. Canadian Greyhound Lines, Ltd. v. Superior Court*, 26 Wn.2d 740, 747-48, 175 P.2d 640 (1946); *O'Brien*, 14 Wn.2d at 348). The circumstances presented here indicate that the delay and difficulty of seeking declaratory and injunctive relief, which the lead opinion acknowledges, could actually deprive Riddle of redress. *See id.* at 13.

The order requiring Riddle to secure a supplemental bond was dated May 4, 2018, was served on May 7, 2018, and set the deadline for compliance as June 6, 2018. Agreed Statement of Facts & R. Pursuant to RAP 16.2(d), Ex. 5, at 1, Ex. 6, at 2, Ex. 7, at 1. The accompanying letter made it clear that the judges intended to declare Riddle's office vacant if she did not timely comply. *Id.* Ex. 6, at 2. If Riddle's office were declared vacant and a successor appointed, even erroneously, Riddle likely would have no possibility of regaining her office, just as a county commissioner whose office was statutorily forfeited on conviction of a felony could not be restored to his position after the conviction was reversed on appeal.

10

*State ex rel. Guthrie v. Chapman*, 187 Wash. 327, 329-32, 60 P.2d 245 (1936); *see also* RCW 36.16.110(1) (county official appointed to fill a vacancy "shall hold office until the next general election"). The risk that this would occur is particularly high because, as noted above, I have doubts as to whether Riddle could obtain a preliminary injunction. Thus, in this particular case, delay would not have been merely inconvenient; it could have deprived Riddle of any remedy, even if she ultimately prevailed on the merits.

Whether there is a plain, speedy, and adequate legal remedy available "'rests in the sound discretion of the court in which the proceeding is instituted.'" *Skagit County*, 177 Wn.2d at 730 (quoting *O'Brien*, 14 Wn.2d at 348). Given the extraordinary circumstances presented by this case, the fact that the superior court judges do not contend that Riddle should have sought declaratory and injunctive relief, and the likelihood that following such a path could not provide an adequate remedy, this court should exercise its discretion to hold that declaratory and injunctive relief is not a plain, speedy, or adequate remedy here. The writ of prohibition should issue.

## CONCLUSION

Riddle did not receive any procedural safeguards before the superior court judges ordered her to file a supplemental bond as a condition of maintaining her

elected office. I would therefore hold the judges acted in excess of their statutory authority and Riddle is entitled to a writ of prohibition. I respectfully dissent.

_____
Yu, J.

Madsen, J.

Fairhurst, CJ.