# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CINDI BRIGHT,

      Respondent,

      v.

FRANK RUSSELL INVESTMENTS and
BRIAN GOLUB, individually and as its
agent,

      Appellants.

No. 72663-3-I

DIVISION ONE

PUBLISHED

FILED: November 2, 2015

COX, J. — In a civil rights case that provides for attorney fees, a court may award a prevailing plaintiff reasonable attorney fees on multiple claims where there is a "common core of facts" *or* where there are "related legal theories" at issue.[1] Here, Cindi Bright obtained a jury verdict of $475,000 in damages against Frank Russell Investments based on her failure to accommodate claim under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. But the jury did not find Frank Russell liable for her unlawful retaliation claim under the WLAD. Nevertheless, the trial court awarded reasonable attorney fees to her on the basis that there was *both* a "common core of facts" for her asserted claims as well as "related legal theories" at issue. The court did not abuse of its discretion in doing so. We affirm.

_____

[1] Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (applying the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988).

Bright formerly worked for Frank Russell Investments in its human resources department. During her employment, Frank Russell investigated several employees, including her, for allegedly violating its code of conduct and code of ethics.

In September 2012, while the investigation was ongoing, Bright took a medical leave of absence. In November 2012, Bright commenced this action, claiming violations of the WLAD. Specifically, she alleged racial discrimination and unlawful retaliation arising from the ethics investigation. She alleged that Frank Russell was treating her more harshly than her colleagues in its investigation.

Later that month, Bright requested disability accommodations. She supported this request with information from her psychologist, who recommended certain accommodations. On December 13, 2012, Frank Russell informed Bright that it denied her request for accommodations and terminated her employment. The company informed her that it terminated her employment due to her "serious misconduct."

In March 2013, Bright amended her complaint to add a failure to accommodate claim to this action.

On summary judgment, the court dismissed Bright's racial disparate treatment claim. It concluded that because she was on medical leave at the relevant time, she was unable to prove that she was performing satisfactory work at the time of the allegedly adverse employment action. The court also

dismissed Bright's racial discrimination claim against one of Frank Russell's senior executives.

The retaliation claim and the failure to accommodate claim went to trial. At the conclusion of a lengthy trial, the jury found that Frank Russell had failed to accommodate Bright's disability and awarded her $475,000 in damages. But the jury did not find Frank Russell liable on her unlawful retaliation claim.

Bright sought an award of reasonable attorney fees and costs pursuant to RCW 49.60.030(2). Frank Russell opposed her request, arguing that Bright failed to segregate time spent on unsuccessful racial discrimination claims.

After a hearing, the trial court gave its oral ruling, explaining its conclusion that Bright demonstrated that there was both a "common core of facts" and "related legal theories" in this case. Accordingly, there was no requirement to segregate attorney fees based on successful and unsuccessful claims, as Frank Russell argued. Thereafter, the court prepared and entered its findings of fact and conclusions of law, and entered a judgment regarding the award of fees and costs.

Frank Russell appeals.

## ATTORNEY FEES AT TRIAL

Frank Russell argues that the trial court abused its discretion by failing to require segregation of time spent on Bright's successful failure to accommodate claim from her unsuccessful race-based claim. We hold that segregation of time on this basis was not required in this case.

The WLAD entitles prevailing plaintiffs to "reasonable attorneys' fees."[2]

Under Bowers v. Transamerica Title Insurance Co., the first step of deciding what is reasonable is to determine the lodestar amount.[3] To calculate the lodestar amount, a court multiplies the number of hours reasonably expended by the reasonable hourly rate.[4] "The court should discount hours spent on unsuccessful claims, duplicated or wasted effort, or otherwise unproductive time."[5]

We review for abuse of discretion whether the amount of an attorney fee award is proper.[6] "A trial court abuses its discretion if a decision is manifestly unreasonable or based on untenable grounds or untenable reasons."[7]

Here, the awardability of reasonable attorney fees is not at issue. RCW 49.60.030(2) clearly authorizes this award to Bright, the successful plaintiff in this case.

Rather, Frank Russell challenges the amount of fees awarded. In doing so, it does not challenge the trial court's findings of fact regarding fees. Accordingly, these findings are verities on appeal.[8]

---

[2] RCW 49.60.030(2).

[3] 100 Wn.2d 581, 597, 675 P.2d 193 (1983).

[4] Id.

[5] Chuong Van Pham v. Seattle City Light, 159 Wn.2d 527, 538, 151 P.3d 976 (2007).

[6] Id.

[7] Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1, 177 Wn.2d 718, 730, 305 P.3d 1079 (2013).

[8] In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

When interpreting the WLAD, Washington courts frequently look to federal authority on the question of fees.[9] Hensley v. Eckerhart,[10] a United States Supreme Court case construing the federal Civil Rights Attorney's Fees Awards Act, supplies reasoning consistently applied to our state cases.[11]

"The amount of the fee, of course, must be determined on the facts of each case."[12]

Here, the focus of our inquiry is whether the reasonably expended hours component of the lodestar calculation is proper. Hensley contains useful analysis on this issue.

There, the petitioners argued that "'an award of attorney's fees must be proportioned to be consistent with the extent to which a plaintiff has prevailed, and only time reasonably expended in support of successful claims should be compensated.'"[13] The respondents in that case argued that the proper focus is on "'whether the time spent prosecuting [an unsuccessful] claim in any way contributed to the ultimate results achieved.'"[14] The United States Supreme

---

[9] Blair v. Wash. State Univ., 108 Wn.2d 558, 570, 740 P.2d 1379 (1987).

[10] 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

[11] See Chuong Van Pham, 159 Wn.2d at 539-40; Blair, 108 Wn.2d at 572; Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 220, 293 P.3d 413, review denied, 178 Wn.2d 1010 (2013).

[12] Hensley, 461 U.S. at 429.

[13] Id. at 432.

[14] Id.

Court took the opportunity to "clarify the proper relationship of the results obtained to an award of attorney's fees."[15]

The Court stated:

> It may well be that cases involving [] unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a **common core of facts or will be based on related legal theories**. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. **Instead the [] court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation**.[16]

The Supreme Court went on to state:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. **The result is what matters**.[17]

Notably, the Supreme Court made the following observation while rejecting an argument very similar to the one Frank Russell now makes:

> We agree with the District Court's rejection of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on

---

[15] Id.

[16] Id. at 435 (emphasis added).

[17] Id. (emphasis added) (citation omitted).

all hours reasonably expended if the relief obtained justified that expenditure of attorney time.[18]

Similarly, in this case Frank Russell argues that "Ms. Bright's attorneys recorded work in progress with a stated value of $1 million towards recovery of a judgment of less than half that amount."[19] Likewise, it uses various percentages as measures of what it characterizes as "success as a whole."[20] But these mathematical measures are not controlling.

Instead, because "there is no precise rule or formula," the trial court has discretion in determining the plaintiff's degree of success.[21]

In this case, the court determined that the trial was "a win" for Bright, rejecting the notion that it was a partial success. The substantial jury verdict supports the trial court's determination. The court noted that Bright received considerably more in damages than the severance packages of her colleagues who were also terminated for allegedly violating ethical rules. The jury's verdict also substantially exceeded Frank Russell's settlement offers.

The trial court also explained in its oral ruling why segregation of time was not required under the circumstances of this case:

> I think that this [case] is clearly from a common core of facts. I don't think these were discrete severable claims that were unrelated in that nature under the Hensley case. I think that these are related legal theories.

---

[18] Id. at 435-36 n.11 (citation omitted).

[19] Brief of Appellant Frank Russell Investments at 13.

[20] Id. at 18-21.

[21] Hensley, 461 U.S. at 436-37.

The evidence as to each of the theories was related to defense's were in large part, I think, related—I think [counsel] has got a good argument—that part of the facts that were trying to paint the plaintiff in an unfavorable light related to whether or not there was truly a need to accommodate her or whether or not she actually had been fired or the decision to fire her had been made in August. And that's—that was why I didn't grant plaintiff's summary judgment on their failure to accommodate, was because I said there's an issue of fact as to whether or not the decision to fire her had been made in August.

Well, because of that, that necessarily makes all the evidence regarding the decision to fire her relevant to the failure to accommodate. That makes this a common core of facts.

So the texts that she sent deal with the decision to fire her; the relationship, the one-night stand that she apparently had relates to the decision to fire her. All those facts that we heard now relate to the decision to fire her, which in my view was Russell's only defense to a failure to accommodate; because Russell was otherwise admitting we did not accommodate.

And so that's what brings these facts together, as I see them. So because of that, I don't think there was an obligation to segregate the fees on some kind of claim-by-claim basis. And I don't view them as a series of discrete claims.[22]

Thus, there was a common core of facts in both her discrimination claims, challenging Frank Russell's decision to terminate.

We also note that Bright raised two legal theories for why her discharge was discriminatory and prevailed on only one. But "[l]itigants in good faith may raise alternative legal grounds for a desired outcome."[23] The legal theories were sufficiently related to justify the award.

The trial court prepared and entered findings of fact and conclusions of law consistent with its oral ruling. As we previously stated, the findings are

---

[22] Report of Proceedings (September 26, 2014) at 56-58.

[23] Hensley, 461 U.S. at 435.

8

verities because they are unchallenged on appeal. And they support the conclusions of law. Thus, the trial court did not abuse its discretion.

Frank Russell makes several additional arguments. None is persuasive.

First, it argues that the trial court abused its discretion under Hensley because Bright's claims could have been filed as separate lawsuits. Not so.

As Hensley noted, courts should treat claims as separate lawsuits when they "are based on different facts *and* legal theories."[24] Thus, courts should treat claims as separate lawsuits when they are both factually and legally unrelated. Conversely, when a plaintiff prevails and the claims "involve a common core of facts *or* . . . related legal theories," the court should not view the lawsuit "as a series of discrete claims."[25]

Here, Bright's claims shared a factual core. Additionally, while Bright brought her claims under two distinct legal theories, they were related. Both claims alleged unlawful discrimination under the WLAD. Thus, the court was not required to treat her claims as separate lawsuits.

Second, Frank Russell relies on Chuong Van Pham v. Seattle City Light.[26] But that reliance is misplaced.

In that case, the trial court reduced the fee award by some hours, concluding that they were "unnecessarily expended, unproductive, or not

---

[24] Id. at 434 (emphasis added).

[25] Id. at 435 (emphasis added).

[26] 159 Wn.2d 527, 151 P.3d 976 (2007).

sufficiently related to the successful claim."[27]  The supreme court affirmed, noting

its deference to the trial court, which "is in the best position to determine which

hours should be included."[28]

Here, the trial court did not conclude that the hours Bright spent on her

racial discrimination claims were unnecessary.  Rather, the trial court determined

that the failure to accommodate claim "necessarily" involved evidence of Frank

Russell's motive for terminating her employment.  There simply is no support for

the argument that <u>Chuong Van Pham</u> is analogous to this case.

Third, Frank Russell argues that the trial court abused its discretion by

awarding Bright fees for all her claims merely because they all arose under the

WLAD.  This mischaracterizes the trial court's decision.

As explained earlier in our quotation of the trial court's oral decision, the

court relied on the fact that Bright's claims shared a common factual core.  It did

not, as Frank Russell argues, rely simply on the fact that the claims arose under

the WLAD.

Similarly, Frank Russell argues that the trial court abused its discretion

because it determined that Frank Russell's litigation strategy created a common

core of facts.  This also mischaracterizes the trial court's decision.

Frank Russell's litigation strategy for both claims was similar.  In essence,

it argued that Bright "had committed dischargeable acts that justified denying her

---

[27] <u>Id.</u> at 540.

[28] <u>Id.</u>

10

accommodation and terminating her [employment]."[29] But the underlying facts, not Frank Russell's defense strategy, created the common core of facts. When Frank Russell terminated Bright, it noted that it was doing so because of her misconduct. Thus, its motive for this decision formed part of the common core of facts.

Fourth, Frank Russell argues that Bright "needlessly increased the cost of adjudicating this case by up to 80%" by bringing her racial discrimination claims.[30]

As we previously noted in discussing Hensley, mathematical formulae are not dispositive in determining what fee is reasonable. Thus, reliance on this mathematical measure is not helpful.

In any event, the evidence about Frank Russell's motive to fire Bright was relevant to her failure to accommodate claim.

Fifth, Frank Russell argues that the court abused its discretion by failing to take into account Bright's degree of success. The company argues that the court should have considered the fact that the jury awarded Bright considerably less in damages than she requested.

This argument is unpersuasive. As noted earlier, the trial court explicitly took Bright's degree of success into account. The court called the result a "win" for Bright. It determined that Bright had been successful and rejected the notion that Frank Russell had partially succeeded.

---

[29] Clerk's Papers at 1639.

[30] Brief of Appellant Frank Russell Investments at 14.

While Frank Russell disagrees with the trial court's assessment of Bright's success, the court has discretion in determining the degree of success.[31] As Chuong Van Pham states, "it is the trial judge who has watched the case unfold and who is in the best position to determine which hours should be included in the lodestar calculation."[32]

Here, the court determined that in light of Frank Russell's proposed settlement, and the amount of damages that Bright received compared to the amount of her colleagues' severance packages, Bright had succeeded. This was not an abuse of discretion. And Frank Russell fails to cite any authority indicating that the court must reduce an award of attorney fees merely because a plaintiff is awarded less in damages than requested.

Finally, Frank Russell argues that Bright should not have received fees for her claim against one of Frank Russell's senior executives. But while her claim against this executive as an individual was dismissed, his actions as Frank Russell's representative formed part of her claims' common factual core.

In reply, Frank Russell contends counsel's billing rates were excessive. We disagree.

The trial court entered unchallenged findings of fact 9 and 10, which note the high quality of counsel's representation and the reasonability of the hourly rates of those who worked on the case. While Frank Russell disagrees with this result, it fails to show that the finding is unsupported by substantial evidence.

---

[31] Hensley, 461 U.S. at 436-37.

[32] 159 Wn.2d at 540.

12

Bright also argues that Brand v. Department of Labor & Industries[33] further supports the trial court's decision. That case discusses the award of reasonable attorney fees under RCW 51.52.130, a provision of the Industrial Insurance Act. Because we have resolved this case on the bases already discussed, we need not decide whether, or to what extent, Brand also supports the trial court's decision in this case.

## COSTS

Frank Russell finally argues that the court should not have awarded Bright costs for her racial discrimination claims. But Frank Russell presents no meaningful analysis of this claim. Accordingly, we reject the argument.[34]

## ATTORNEY FEES ON APPEAL

Bright requests an award of reasonable attorney fees and costs on appeal. We hold that she is entitled to both.

Under RCW 49.60.030(2), a successful plaintiff who also prevails on appeal is entitled to an award of reasonable attorney fees and costs on appeal.[35]

Here, because Bright prevails on appeal, she is entitled to an award of attorney fees, subject to compliance with RAP 18.1. Likewise, she is also entitled to an award of costs on appeal.

---

[33] 139 Wn.2d 659, 989 P.2d 1111 (1999).

[34] See Darkenwald v. Emp't Sec. Dep't., 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

[35] Martini v. Boeing Co., 137 Wn.2d 357, 377, 971 P.2d 45 (1999).

13

We affirm the trial court's order granting Bright attorney fees and costs. Likewise, we award her reasonable attorney fees and costs on appeal, subject to compliance with RAP 18.1.

_Cox, J._

WE CONCUR:

_Spearman, J._          _Appelwick, J._