IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of<br><br>DENNY DOUGLAS TITUS,<br><br>                Deceased.<br><br>EMILY R. HANSEN,<br><br>                Respondent,<br><br>        v.<br><br>FRED V. CHRISTIANSON,<br><br>                Appellant. | No. 79760-3-I<br>(consolidated with 79660-7-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — The court appointed Emily Hansen as guardian ad litem (GAL) for Denny Douglas Titus in two actions where the State sought to protect Titus from financial exploitation by Robert Crawford. In this Trust and Estate Dispute Resolution Act (TEDRA), ch. 11.96A RCW, petition, the trial court granted summary judgment in favor of Hansen, finding Fred Christianson, a former personal representative of Titus's estate, liable for Hansen's creditor's claims flowing from her appointment as GAL and awarding her fees incurred as a result of the TEDRA petition. The court also imposed sanctions against Christianson and his attorney.

Because Christianson breached his fiduciary duty by failing to act as a reasonably prudent person in the management of the estate and because Hansen was unable to collect her claims from the estate due to Christianson's

Citations and pin cites are based on the Westlaw online version of the cited material.

actions, Hansen was entitled to judgment against Christianson personally. Additionally, pursuant to RCW 11.96A.150, Hansen was entitled to the fees she incurred as a result of the TEDRA petition. We therefore affirm the trial court's order on summary judgment. However, because Christianson did not receive adequate notice that Hansen sought sanctions against him personally, we reverse the award of sanctions.

FACTS

In 2015, Titus twice signed powers of attorney to Crawford. Additionally, in August 2015, Titus executed a quitclaim deed transferring "all right, title, and interest" in his home (property) located in Seattle, Washington, to Crawford's company, Marathon Legal Services Inc. Titus and Crawford also signed a "Letter of Agreement Re Employment Agreement" (agreement). Therein, Marathon agreed to pay Titus $75,000 within 30 to 90 days of the agreement and a $3,000 monthly salary "as a Marathon contractor." Marathon also agreed to assume rent and utilities for Titus's office space, and title to the property was to revert back to Titus in 2017, after Titus's "two year tenancy at $1.00 per year."[1] The Real Estate Excise Tax Supplemental Statement noted that the property was a "gift" without consideration and that Titus would "continue to make 100% of the payments on [the] total debt of $165,000.02."

Shortly after Crawford and Titus executed the agreement, Titus's pastor, Sharon Bush, filed a complaint with the State alleging that Crawford was

---

[1] Title should have reverted to Titus's estate on August 4, 2017. In fact, Marathon retained title until the property was foreclosed upon in 2018.

exploiting Titus. On this basis, the State brought a guardianship petition alleging that Titus was incapacitated (guardianship petition). The State also brought an action under the abuse of vulnerable adults act (AVAA), ch. 74.34 RCW, to have Titus declared a vulnerable adult (AVAA petition). The court issued a temporary order of protection—or Vulnerable Adult Protection Order (VAPO)—against Crawford, restraining the sale of the property and ordering an account of every dollar that "came into or out of Mr. Titus' estate since [Crawford] became attorney-in-fact."[2] Pursuant to these petitions, the court appointed Hansen as GAL and Kameron Kirkevold as Titus's attorney.

In her role as GAL, Hansen spoke with Titus. During their conversation, Titus stated that he received neither the $75,000 owed to him pursuant to the agreement nor a monthly payment from Crawford. Specifically, Titus "insisted that Mr. Crawford had no obligation to pay him until the sale of his house." Titus "threatened to end his life" and said that "[h]e only need[ed] Mr. Crawford to take care of him and his tremendous debt."

In her GAL report, Hansen determined that Titus was a vulnerable adult in need of protection from Crawford's financial exploitation. She concluded that Titus was "unable to handle any of his financial affairs" and could not adequately care for his medical needs. Hansen found that "Crawford persuaded [Titus] to transfer title to five (5) vehicles to him," including titles to four classic vehicles, "estimated at $20-25,000 in the aggregate." Crawford sold the vehicles, but Titus neither knew of the amount received as payment nor received any payment.

---

[2] The record does not contain the protection orders.

3

Furthermore, Titus had "no idea whatsoever the extent of his assets and income expended by Mr. Crawford," and did not "have any interest in an accounting." Hansen concluded that because of "cognitive impairment resulting from serious medical conditions, [Titus's] decision-making was significantly impaired," and he was unable "to comprehend [Crawford's] egregious self-dealing."

On July 2, 2016, Titus died intestate. Thereafter, the court struck the trial for the guardianship petition and dismissed the petition. In August 2016, the probate court appointed Christianson as personal representative of Titus's estate. Christianson served under court supervision. The court did not require Christianson to post a bond for the estate. However, the court ordered him to "advise the court on the known assets and liabilities of the estate" within 60 days in order to determine whether a bond was necessary to protect the estate. Christianson did not comply and never secured a bond for the estate's protection.

In May 2017, Christianson and Crawford entered into an agreement for payment of $65,000 to the estate "upon the sale of Marathon's property" (settlement). The settlement agreement "release[d] and discharge[d] Marathon and all principals, officers, agents, attorneys, employees . . . of Marathon, from any and all claims, demands, causes of action known or unknown which the Estate may now have or may hereafter have in relation to any matter between the Parties." The estate never received the promised payment.

In August 2017, after the court had approved two previous creditor's claims for $17,147.45 and $9,961.84, Hansen filed a second amended creditor's claim requesting a principal judgment amount of $15,837.22 against the estate.

4

The court approved her claim and added it to the two prior awards, including an "interest at the rate of 12% per annum . . . until paid in full." At the same time, Christianson secured the rescission of the VAPO and dismissal of the AVAA petition without prejudice.[3] In the order dismissing the AVAA petition and the VAPO, the court awarded fees to Hansen.

In April 2018, the mortgagee foreclosed on Titus's property because the mortgage had not been paid since June 1, 2016. The mortgagee's complaint showed that despite the VAPO enjoining Crawford from the sale or encumbrance of Titus's residence, in September 2016, Crawford had recorded two deeds of trust: (1) $350,000 to his business associate, Anita Frick, and (2) $250,000 to Louis J. Berg.

On September 7, 2018, the court issued an order to show cause to revoke Christianson's letters of administration. During the hearing, Hansen again requested the approved GAL fees. The court noted that there was no objection to Hansen's creditor's claims and that, therefore, the estate must pay the fees within 30 days. The court ordered judgment of Hansen's fees for $50,009.38 and awarded her an additional $2,400.00 to "be paid by the Estate of Denny Douglas Titus." Additionally, pursuant to RCW 11.28.250, the court removed Christianson as personal representative for mismanagement, waste, and neglect.[4]

---

[3] Kirkevold originally requested, on behalf of Titus, dismissal of the VAPA petition in April 2016. However, the court did not dismiss the petition until Christianson took over as personal representative.

[4] RCW 11.28.250 provides the trial court authority to revoke letters from a personal representative when the court "has reason to believe that [they have] wasted, embezzled, or mismanaged, . . . or ha[ve] wrongfully neglected the estate."

When the estate did not pay her claims within 30 days, Hansen filed a TEDRA petition against Christianson, alleging that he breached his fiduciary duty by, among other things, entering into the settlement with Crawford and seeking rescission of the VAPO. Hansen alleged that Christianson never provided her with his filed response to the TEDRA petition.[5] But in his response, Christianson alleged that the State's agents perpetuate "a massive guardianship and probate fraud ("GPF") scheme." Christianson also asserted that, among other things, Hansen attempted to extort Crawford, has "criminal history," and committed manslaughter in the second degree. Christianson "assert[ed] [his] right under 18 U.S. Code § 4 to demand" that "the Court notify the United States Attorney for the Western District" of Hansen's "federal criminal activity." He argued that the court's failure to notify the U.S. attorney "would constitute the Court having committed the federal crime of Misprision of Felony." Christianson also argued that Hansen and the trial court "failed to cite valid evidence supported by the court record of the alleged waste, mismanagement or neglect."

In December 2018, Hansen moved for CR 11 sanctions against Christianson's attorney, Jonathan Grindell. In her motion, Hansen contended that Grindell filed irrelevant pleadings and exhibits not well grounded in fact and not warranted by existing law, and concealed and refused to serve pleadings on Hansen. In granting Hansen's CR 11 motion, the court made 29 findings of Christianson and Grindell's "bad faith litigation conduct[,] . . . result[ing] in

---

[5] During a later hearing, Hansen admitted that she "had forgotten to sign up for e-service."

[Hansen's] increased litigation time and expense." The court imposed $10,000 in sanctions against Christianson and Grindell, jointly and severally.

In January 2019, Hansen moved for summary judgment, and in February 2019, the court heard Hansen's motion. There, Christianson asserted "[t]here are numerous, numerous genuine material facts." He was unable to cite the record for even one genuine issue of material fact. That day, the trial court granted Hansen's motion for summary judgment against Christianson, awarding her $55,072.68 and pursuant to RCW 11.40.080, RCW 11.96.150,[6] or RCW 4.84.185, reasonable attorney fees and costs.

Later, Hansen sought to reduce to judgment the CR 11 sanctions imposed on Christianson and Grindell. In reply, Christianson asked the court to remove joint and several liability on Christianson, arguing that the order violated his right to due process. The court disagreed and in its order noted that Hansen's initial CR 11 motion only sought sanctions against Grindell, but that it was entitled to impose sanctions against Christianson or Grindell. The court granted Hansen's motion and found it had authority to impose sanctions against Christianson and Grindell jointly and severally.

Hansen later submitted her presentation of proposed judgment on her motion for summary judgment. Therein, she sought supplemental judgment for the fees she incurred following the court's original decision on summary judgment. Christianson replied, arguing that the trial court did not have authority

---

[6] The trial court committed an obvious scrivener's error when it said it awarded fees under RCW 11.94A.150 because no such statute exists.

under RCW 11.40.080(2), RCW 11.94A.150, or RCW 4.84.185 to impose a supplemental judgment in favor of Hansen. He also challenged many of the fees that Hansen requested.

In June 2019, the court issued a judgment nunc pro tunc, ordering judgment in favor of Hansen in the principal amount of $55,072.68, "including prejudgment interest through February 15, 2019." Pursuant to RCW 11.40.080, RCW 11.96A.150, and RCW 4.84.185, the court also awarded Hansen attorney fees and costs of $41,989 and "post-judgment interest at the rate of 12% per annum on this judgment from February 15, 2019," until paid in full. Christianson appeals.

ANALYSIS

Summary Judgment

Christianson contends that the trial court erred when it granted Hansen's motion for summary judgment and found him liable for Hansen's creditor's claims. We disagree.

"We review summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Green v. Normandy Park, 137 Wn. App. 665, 681, 151 P.3d 1038 (2007). The moving party bears the initial burden of showing that there is no

8

genuine issue of material fact.  Hash by Hash v. Children's Orthopedic Hosp. & Med. Ctr., 110 Wn.2d 912, 915, 757 P.2d 507 (1988).

Hansen argued below that she was entitled to summary judgment because (1) Crawford breached his fiduciary duty as attorney-in-fact for Titus by engaging in self-dealing and (2) as a result, Christianson breached his fiduciary duty as the estate's personal representative by securing the dismissal of the AVAA petition and entering into the settlement with Crawford.  She further argued that but for Christianson's breach of his fiduciary duty, the estate would have been solvent and capable of paying her creditor's claims.  In all respects, we conclude that Hansen met her burden to show that there were no genuine issues of material fact.

First, as attorney-in-fact, Crawford owed Titus a fiduciary duty.  In particular, Crawford had a duty to act in good faith and "[a]ct so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's[—in this case, Titus's—]best interest."  RCW 11.125.140(1)(b), (2)(b).

Crawford created a conflict of interest by receiving title to the property and entering into the agreement, which benefited his company.  And Crawford and Marathon failed to fulfill their contractual obligations.  Specifically, Titus received none of the promised payments, and the property's title never reverted back to the estate as required by the agreement.  Crawford also never paid rent on Titus's office space, and he executed two deeds of trust on the property, one of which was for a business associate, despite a VAPO enjoining such actions.  Finally, Crawford sold Titus's cars and did not pay Titus or the estate any of the

9

proceeds, and Hansen presented evidence that he withdrew funds from Titus's account. While we must take all reasonable inferences in the light most favorable to the nonmoving party, Christianson provided no evidence from which we may infer anything contrary to these facts. In short, Hansen presented sufficient evidence that Crawford did not act in good faith or in Titus's best interest. Therefore, Hansen satisfied her burden to show that no genuine issue of material fact existed and that Crawford breached his duty as attorney-in-fact.

Next, with regard to Christianson's duty, an estate's "personal representative stands in a fiduciary relationship to those beneficially interested in the estate." In re Estate of Larson, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985). The personal representative "is obligated to exercise the utmost good faith and diligence in administering the estate in the best interests of the heirs." Larson, 103 Wn.2d at 521. To this end, a personal representative must "utilize the skill, judgment, and diligence which would be employed by the ordinarily cautious and prudent person in the management of [their] own trust affairs." Hesthagen v. Harby, 78 Wn.2d 934, 942, 481 P.2d 438 (1971). And it is the personal representative's duty "to settle the estate[ ] . . . as rapidly and as quickly as possible, without sacrifice to the probate or nonprobate estate" and to "collect all debts due the deceased and pay all debts." RCW 11.48.010.

Because Crawford had breached his fiduciary duty and owed the estate considerable debts, a prudent personal representative would not have entered into the settlement. Hansen presented evidence that the settlement sacrificed the validity of the estate. In particular, the settlement failed to account for over

10

$100,000 Crawford owed to the estate pursuant to the agreement and did not consider the payments that Crawford transferred to himself from Titus's bank account or the sale of Titus's vehicles. In addition, Christianson failed to (1) secure the settlement's payment, (2) receive the court's approval of the settlement, as required, (3) provide an accounting of the estate's assets, as required, and (4) secure a bond for the estate's protection. In short, Hansen presented evidence, even taken in the light most favorable to Christianson, that when he entered into the settlement and secured the rescission of the VAPO, Christianson did not utilize the skill, judgment, and diligence that an ordinarily cautious and prudent person would employ in the management of their own trust affairs.

Hansen also presented evidence that Christianson's actions resulted in her inability to collect her creditor's claims from the estate. Under RCW 11.48.080, "[n]o personal representative shall be accountable for any debts due the estate, if it shall appear that they remain uncollected without his or her fault." Here, the settlement agreement allowed Crawford to retain title to the property until he sold it and thereafter pay the estate only $65,000 of the sale proceeds; at the same time, Crawford planned to receive $200,000 from the sale. And rescission of the VAPO meant that Crawford could sell the property. Without the *estate's* sale of the property, Hansen alleged in her declaration—and Christianson failed to rebut—the estate was unable to pay its creditors.[7]

---

[7] In April 2018, the due and unpaid principal balance on the property's mortgage was $160,414.63, plus interest. The total of the creditors' claims in April 2018 was around $127,000.00. As of December 20, 2018, Realtor.com

Accordingly, Christianson was responsible for Hansen's inability to collect her debts from the estate, and he was personally liable for Hansen's creditor's claims against the estate. For the above reasons, the trial court did not err in concluding that Christianson breached his fiduciary duty and finding him liable for Hansen's creditor's claims.

Christianson disagrees and contends that "Hash is directly applicable to this case." In Hash, six-year-old Joanne Marie Hash sued Children's Orthopedic Hospital (COH) after she fractured her femur while undergoing physical therapy. 10 Wn.2d at 913. COH moved for summary judgment and submitted two affidavits, one of which stated that "[i]t is possible for a child to suffer a fractured bone during physical therapy when the therapist is *not* negligent." Hash, 110 Wn.2d at 913-14 (alteration in original). Hash did not submit affidavits in response to COH's motion but contended that COH failed to submit sufficient evidence to establish that there were no genuine issues of material fact. Hash, 110 Wn.2d at 914. Our Supreme Court concluded that COH had not met its burden to show that there was no genuine issue of material fact. Hash, 110 Wn.2d at 916. The court reasoned that the submitted affidavits included no account of the material facts and that a reasonable inference from the above statement, when resolved in Hash's favor, is that negligence *could* have caused Hash's injury. Hash, 110 Wn.2d at 916.

Hash is distinguishable because, here, Hansen did not present evidence

---

listed the property's value as $652,200.00. Given the mortgage and federal and state tax liens, the property's sale was more than sufficient to cover all creditors' claims with residual to Titus's son.

that, when taken in the light most favorable to Christianson, provides an inference that there is a genuine issue of material fact. Instead, as discussed above, Hansen met her burden to prove that Christianson breached his fiduciary duty by failing to collect on the debts Crawford owed to the estate, by entering into the settlement and thereby sacrificing the estate's solvency, and by utilizing poor judgment when he dismissed the AVAA petition. Moreover, Hansen provided evidence of the facts in her declaration and the numerous exhibits attached thereto. Accordingly, Hash is not applicable to this case.

Christianson makes a number of additional arguments that are unpersuasive. He contends that Hansen provided no authority to support the proposition that Christianson was required to maintain the AVAA petition or VAPO against Crawford. While it is true that Christianson was not statutorily obligated to maintain the AVAA petition,[8] as discussed above, Hansen established that no genuine issue of material fact exists as to whether a reasonably prudent personal representative would have sought dismissal of the AVAA petition or the VAPO in this case.

Additionally, Christianson contends that Hansen—to prevail on her motion for summary judgment—was required to show that (1) an action by the estate against Marathon would not have been successful, (2) had Christianson

_____

[8] Rather, RCW 74.34.210 leaves the decision to the discretion of the estate's personal representative. It provides that in the death of a vulnerable adult, "the right to . . . maintain the action shall be transferred to . . . the administrator of the deceased, for recovery of all damages for the benefit of the deceased person's beneficiaries . . . or . . . for recovery of all economic losses sustained by the deceased person's estate."

13

remained the estate's personal representative, he would not have pursued an action against Crawford, (3) the estate can no longer pursue a claim against Crawford, and (4) the AVAA petition against Crawford would have been successful. Contrary to Christianson's assertion at oral argument, the settlement explicitly released Crawford and Marathon from all liability to the estate. As such, these contentions are unpersuasive as no action against either could have ensued. Furthermore, with regard to the AVAA petition, while its guaranteed success would have further supported Hansen's argument, it is not required— and therefore immaterial—to prove that Christianson breached his fiduciary duty. Accordingly, we are not persuaded.

Attorney Fees and Costs

Christianson also challenges the court's award of Hansen's attorney fees and costs for the TEDRA petition. We conclude that the trial court had the authority to grant fees under RCW 11.96A.150 and that the fee award was reasonable.

"Whether a party is entitled to an award of attorney's fees is a question of law and is reviewed on appeal de novo." Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). Generally, an award of attorney fees must be "authorized by contract, statute, or recognized ground of equity." Durland, 182 Wn.2d at 76. To this end, the trial court awarded Hansen fees based on RCW 11.40.080(2) and RCW 11.96A.150.[9]

---

[9] On appeal, Hansen does not contend that the trial court had authority under RCW 4.48.185. Accordingly, we do not address RCW 4.48.185 or the trial court's reliance thereon.

Under RCW 11.40.080(2), an estate's creditor is entitled to recover fees from the *estate*. Accordingly, under its plain language, the statute did not provide authority for the court to grant fees to Hansen from Christianson. Thus, the trial court lacked the statutory authority under RCW 11.40.080(2) to award Hansen's TEDRA fees from Christianson, and it therefore erred in that respect.

Under RCW 11.96A.150, in a TEDRA petition, "[e]ither the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party . . . [f]rom any party to the proceedings." And the court may grant fees and costs "in such amount and in such manner as the court determines to be equitable." RCW 11.96A.150(1). "In exercising its discretion, . . . the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150(1). In short, RCW 11.96A.150 authorizes the court broad discretion to grant attorney fees and costs in a TEDRA action. See, e.g., In re Guardianship of Lamb, 173 Wn.2d 173, 198, 265 P.3d 876 (2011) ("The express language of RCW 11.96A.150 leaves attorney fee awards in cases resolving guardianship disputes to the court's discretion."). Thus, the trial court had authority to award Hansen fees.

Christianson disagrees and contends that the trial court should have considered the novelty of the case and whether Hansen's TEDRA petition benefited the estate.[10] The court's failure to consider these facts is not an abuse

---

[10] In support of his contention, Christianson cites a number of cases that

15

of discretion because the court "may consider any and all factors that it deems to be relevant and appropriate." RCW 11.96A.150(1). Moreover, the statute specifically provides that a court need not consider whether the petition benefited the estate. RCW 11.96A.150(1). Accordingly, Christianson's contention fails.

Because the court had authority to award fees, we next review whether the award was reasonable. To this end, "[w]e review for abuse of discretion whether the amount of an attorney fee award is proper." Bright v. Frank Russell Invs., 191 Wn. App. 73, 78, 361 P.3d 245 (2015).

Christianson asserts that the fees were "grossly excessive." In particular, Christianson asserts that Hansen received fees for research completed before she began drafting her TEDRA petition. He points to, among other things, Hansen's inclusion of services for her research into Marathon, for the removal of Christianson as personal representative, and for the preparation of her motion for sanctions. But the trial court had discretion to impose the fee award that it

---

involved the appellate court either exercising its own discretion to determine whether to award fees on appeal or affirming the trial court's decision by finding no abuse of discretion. See In re Estate of Collister, 195 Wn. App. 371, 382 P.3d 37 (2016) (awarding neither party attorney fees on appeal because the court accepted the losing party's argument in part); In re Washington Builders Ben. Trust, 173 Wn. App. 34, 85-86, 293 P.3d 1206 (2013) (declining to award fees to one party where the litigation raised "unique issues" but awarding fees to another party for those issues on which it prevailed on appeal); In re Estate of Lowe, 191 Wn. App. 216, 239-40, 361 P.3d 789 (2015) (affirming the trial court's decision to grant the appellant fees, but exercising its discretion and denying fees on appeal because the prevailing party kept silver "treasure" that "ably allows him to afford the expense of this appeal"); In re Estate of Jones, 170 Wn. App. 594, 287 P.3d 610 (2012) (affirming the trial court's decision to deny attorney fees to the prevailing party in a TEDRA action). These cases only reaffirm that we should not disturb a fee award under RCW 11.96A.150 absent a showing that the trial court acted unreasonably.

deemed equitable. And Christianson failed to show that the award was manifestly unreasonable or based on untenable grounds. See Bright, 191 Wn. App. at 78 ("'A trial court abuses its discretion if a decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" (quoting Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1, 177 Wn.2d 718, 730, 305 P.3d 1079 (2013)).

Next, Christianson claims that Hansen received duplicative costs because "[a]t least part of the services for which [she] was awarded $41,989 were also awarded to her in the CR 11 motion." Christianson makes the conclusory assertion that "she was double compensated by $5,655" because of the CR 11 award. But Christianson does not point to evidence in the record that Hansen was awarded double recovery for the same services. See In re Estate of Palmer, 145 Wn. App. 249, 265, 187 P.3d 758 (2008) (The appellant is "obligated to demonstrate why *specific findings* of the trial court are not supported by the evidence and to *cite to the record* in support of that argument." (emphasis added)). Therefore, we are not persuaded that the trial court's award was unreasonable. See Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 147, 859 P.2d 1210 (1993) (When attorney fees are authorized, in order to reverse the award based on unreasonableness, the opponent *must show* "that the trial court manifestly abused its discretion." (emphasis added)).

Christianson also contends that in its nunc pro tunc order, the court entered prejudgment interest on Hansen's fees incurred as a result of the

17

TEDRA petition.[11]  A nunc pro tunc order records a prior act of the court that was "*actually performed* but not entered into the record at that time."  State v. Rosenbaum, 56 Wn. App. 407, 410-11, 784 P.2d 166 (1989); see also State v. Hendrickson, 165 Wn.2d 474, 478, 198 P.3d 1029 (2009).

Here, the court's June nunc pro tunc order recorded an action already performed by the court in the February order, i.e., the award of fees and postjudgment interest thereon.  Because the original judgment included Hansen's fees and the original judgment was entered in February, the court's order granting interest beginning in February recorded an event that occurred at that time.  In the June order, the court adjusted the fees to include the additional work Hansen did replying to Christianson's responses to her entry of judgment motion, considered additional documents from both parties, and again awarded postjudgment interest dating back to February 15, 2019.  Accordingly, the court did not award prejudgment interest, the nunc pro tunc order was not improper, and the trial court did not err.

As a final matter, Christianson contends that the trial court's order granting fees should be reversed because the trial court offered only five days for his response to Hansen's motion and failed to exclude holidays.  CR 6(d) and King County Superior Court Local Civil Rule 7(b)(4)(A) require a moving party to provide notice of written motions at least five and six days in advance of the hearing thereon, respectively.  But "'CR 6(d) is not jurisdictional, and . . . reversal

---

[11] In its nunc pro tunc order, the court only addresses "prejudgment interest" with respect to Hansen's creditor's claims.  That interest, the court notes, is included in the judgment's principal amount.

for failure to comply requires a showing of prejudice.'" Goucher v. J.R. Simplot Co., 104 Wn.2d 662, 665, 709 P.2d 774 (1985) (quoting Brown v. Safeway Stores, Inc., 94 Wn.2d 359, 364, 617 P.2d 704 (1980)). Christianson has not shown prejudice. In fact, Christianson did respond to Hansen's motion for fees months later, and the court took into account Christianson's response when it entered the nunc pro tunc order for fees and costs on June 17, 2019. Therefore, the error does not require reversal. See, e.g., King County Water Dist. No. 90 v. City of Renton, 88 Wn. App. 214, 231, 944 P.2d 1067 (1997) (holding that the court's order issued two days after a party's motion was submitted was not reversible error and that the nonmoving party, which failed to reply to the motion, "was given sufficient notice and opportunity to be heard on the issue of sanctions").

Sanctions

Christianson also asserts that the court did not provide adequate notice that he would be sanctioned and that therefore the trial court erred when it imposed sanctions against him. We agree.

"CR 11 procedures 'obviously must comport with' the due process requirements of notice and an opportunity to be heard." King County Water Dist. No. 90, 88 Wn. App. at 231 (quoting Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 224, 829 P.2d 1099 (1992)). And "'[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

19

objections.'" Young v. Thomas, 193 Wn. App. 427, 440, 378 P.3d 183 (2016) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). Accordingly, whether Christianson received adequate notice of personal sanctions is an issue of constitutional magnitude and may be raised for the first time on appeal. See RAP 2.5(a)(3) (A party may raise, "for the first time in the appellate court," a "manifest error affecting a constitutional right.").

Here, the trial court sanctioned Grindell and Christianson jointly and severally. But the record did not indicate that Hansen sought sanctions against Christianson. Specifically, Hansen's motion stated that she sought "entry of an order of sanctions against . . . Christianson's attorney, Jonathan Grindell." She cited "Mr. Grindell's conduct" in support of her motion and concluded that she was seeking sanctions "against Mr. Grindell personally." At the sanctions hearing, the court and Hansen's comments did not indicate an intent to impose sanctions against Christianson. In particular, the court challenged Grindell's conduct specifically, stating that he "misrepresented" the court's orders in his motions to the court. And Hansen alleged that Grindell continuously partook in ex parte communication and failed to serve Hansen pleadings. In short, Hansen's motion was not reasonably calculated to apprise Christianson that she sought sanctions against him personally. Thus, the court's imposition of sanctions against Christianson violated his due process rights of notice and opportunity to state his objections and therefore must be reversed.

20

Fees on Appeal

Hanson requests fees on appeal pursuant to RCW 11.96A.150.  It is within this court's discretion to award fees and costs to Hansen as the substantially prevailing party on appeal.  RCW 11.96A.150.  We may order an amount of fees deemed "equitable" and "may consider any and all factors that [we] deem[ ] to be relevant and appropriate."  RCW 11.96A.150.  And contrary to Christianson's contention, this appeal does not involve a unique issue; it is merely a common breach of fiduciary duty claim.  Cf., Bale v. Allison, 173 Wn. App. 435, 461, 294 P.3d 789 (2013) (holding that the issue of whether a quitclaim deed "must recite consideration" was a unique issue and "an award of fees to either party [was] unwarranted"); In re Estate of D'Agosto, 134 Wn. App. 390, 402, 139 P.3d 1125 (2006) (holding that in "novel issues of statutory construction[, a]n award of fees to either party is unwarranted").  And here, Christianson's bad faith litigation practices throughout the proceedings below, including alleging that Hansen committed manslaughter and other conduct the trial court considered sanctionable, entitles Hansen to her fees and costs on appeal subject to her compliance with RAP 18.1.

For the foregoing reasons, we affirm in part and reverse in part.

WE CONCUR:

Andrus, A.C.J.

21